## Colón *v.* Roig.

Apelación procedente de la Corte de Distrito de San Juan.

No. 64.—Resuelto en Mayo 19, 1904.

Contrato—Validéz y Forma de los mismos—Requisitos Esenciales.—Los contratos son obligatorios cualquiera que sea la forma en que se hubieren celebrado y siempre que concurran en ellos todos los requisitos esenciales para su validez.

Id. —Otorgamiento de Escritura—Consentimiento—Contratantes.—Si la ley exigiere el otorgamiento de escritura ú otra forma especial para hacer efectivas las obligaciones propias de un contrato, los contratantes podrán compelerse recíprocamente á llenar tal formalidad, desde que hubiere intervenido el consentimiento y demás requisitos esenciales para darle validez.

Sociedad Civil—Constitución.—La sociedad civil se puede constituir en cualquier forma, á no ser que se aportaren á ella bienes inmuebles ó derechos reales, en cuyo caso es necesario constituirla por escritura pública y hacer un inventario de todos los bienes, que deberá unirse á ella.

Id.—Sociedad Mercantil.—Los requisitos que exige el Código de Comercio á las Sociedades mercantiles, ó sea, la escritura pública y su presentación en el Registro público de comercio para su inscripción, no son de aplicación á la sociedad civil, y en muchos casos la concurrencia ó no de tales requistos es la única nota para determinar si la sociedad es civil ó mercantil.

Id.—Capacidad de las partes y objeto del Contrato.—Para determinar la constitución del contrato de sociedad civil, hay que deteminar si concurren ó no los elementos personales, reales y formales propios del mismo; y si las partes tienen capacidad para obligarse y el objeto de la sociedad es lícito, el contrato es válido, aunque no conste en escritura pública, que no es requisito esencial, siempre que no se hubieren aportado á ella bienes inmuebles.

Id.—Constituida una sociedad civil con el fin de dedicarse á la construcción de determinadas obras, la circunstancia de que esa sociedad, en el curso ordinario de sus negocios, estableciera accidentalmente una tienda de provisiones, mercancías y panadería, en nada puede alterar su naturaleza, ni convertirla en mercantil, ni influir con respecto á los derechos y deberes de los socios entre sí.

Id.—Responsabilidades del Socio Administrador.—El socio que hubiere tenido á su cargo la administración de la sociedad durante el tiempo en que estuvo vigente. y se hubiere hecho cargo, al disolverse ésta, de todas las existencias de la misma, viene obligado á rendir cuenta de su administración á los demás socios, por el tiempo que ésta durara, siendo responsable, también, del pago de utilidades que correspondieran al otro socio.

Id.—Responsabilidades de los Socios para con la Sociedad.—El socio que se hubiere obligado á aportar una suma de dinero, y no la hubiere aportado, es de derecho deudor de los intereses desde el día en que debió aportarla, sin perjuicio de indemnizar, además, los daños y perjuicios que hubiere causado.

Id.—Distribución de las Ganancias y Pérdidas.—Siendo iguales los capitales que cada uno de los socios debiera aportar á la sociedad, además de su trabajo personal los beneficios que en ella se obtuvieran. así como las pérdidas. deben ser distribuidas entre los socios por iguales partes.

Costas.—Las costas deben imponerse al litigante cuyas pretensiones sean totalmente desestimadas, debiendo en los demás casos imponerlas el Tribunal con arreglo á equidad.

## EXPOSICIÓN DEL CASO.

En los autos del juicio declarativo seguido en el Tribunal del Distrito de San Juan, entre partes de la una como demandante, Don Jaime Colón, mayor de edad, de●●stado casado, maestro de obras y vecino de Ciales, representado y dirigido en esta Superioridad por su abogado defensor Don Jacinto Texidor, y de la otra, como demandado, Don José Roig Colomer, mayor de edad, casado, agricultor y vecino de Utuado, dirigido y representado por su abogado defensor Don Juan Hernández López, sobre rendición de cuentas; autos pendientes ante Nos á virtud del recurso de apelación interpuesto por el demandado contra la sentencia pronunciada por el expresado Tribunal de Distrito, la que copiada á la letra dice así:

Sentencia.—En la ciudad de San Juan de Puerto Rico, á once de Junio de mil novecientos tres.—Vistos en juicio oral y público estos autos declarativos seguidos entre partes, de la una, como demandante, Don Jaime Colón, mayor de edad, casado, maestro de obras y vecino de Ciales, dirigido y representado por el Licenciado Don Hilario Cuevillas Hernández, y de la otra Don José Roig Colomer, mayor de edad, casado, agricultor y vecino de Utuado, dirigido y representado por el Licenciado Don Juan Hernández López.

1º. *Resultando*: que Don Jaime Colón formuló demanda contra Don José Roig Colomer solicitando se declarara con lugar, y que la sociedad civil "constructora" de Roig y Colón, quedó rota y disuelta por actos exclusivos é ilegales de Don José Roig Colomer; que éste está obligado á rendirle cuenta comprensiva de todos los gastos y utilidades de la sociedad hasta el día en que terminó el contrato de destajo con Don Carlos Ereño, incluyendo en ella los capitales aportados por ambos socios, entregándole su capital, utilidades hasta el día referido y las que pudieran obtenerse dentro del contrato á justa regulación de peritos con las costas.

2°.    *Resultando*: que esa demanda la funda en los hechos siguientes: que conociendo el demandado la pericia del demandante que es Maestro de Obras y por la conveniencia de asociarse á él para contratar toda clase de obras, le propuso constituir una sociedad industrial bajo la razón expresada, la que usaría un sello para marcar sus documentos, dedicándose á la construccióñ de toda clase de obras del Estado y particulares por contratos directos ó indirectos ó destajos, durante cuatro años, llevando el socio Roig Colomer la parte administrativa, un libro de contabilidad y la caja de caudales y el socio Colón la dirección técnica y del personal de las obras, dirigiendo su ejecución; que los socios debían aportar las cantidades necesarias para afrontar las obras contratadas, se repartirían por mitad las utilidades, cada socio podría tomar para sus gastos las cantidades prudenciales que se cargarían á sus cuentas respectivas para deducirlas de las utilidades obtenidas, debiendo ponerse de acuerdo ambos socios; que se tomó á destajo á Don Carlos Ereño la construcción de la carretera desde el puente del "Caguanitas", de Utuado, hasta el paso de Caniaco; que el contrato de Ereño con la sociedad Roig y Colón se hizo dándole á aquél el doce y medio por ciento de beneficio sobre todas las certificaciones de obras ejecutadas; constituidos en la capital los dos socios Roig y Colón, por carta fechada en dicha ciudad en los primeros días de Enero de 1900 que dirigiera el primero para la compra de herramientas y útiles y levantar fondos, le manifestó Roig la conveniencia de hacer una negociación con el Banco Español de Puerto Rico por cinco mil pesos provinciales suscribiendo Colón un pagaré por esa suma, negociación que no se llevó á efecto, mandando retirar dicha obligación y que cada cual aportara á la obra las cantidades necesarias según tenian convenido; que el 15 de Enero de 1900 empezaron los trabajos y al frente de ellos Colón, cuya dirección duró hasta el 15 de Abril de dicho año en cuya época tuvo que retirarse á causa de un atropello de que fué víctima en la obra, ultrajado de palabras y obra por el albañil Ramón Martínez, quien dijo lo motivaba el defender á Roig Colomer, produciendo ese hecho un estado anormal en su salud hasta el 27 del mismo mes que alentado volvió á ponerse al frente de los trabajos, retirándose al siguiente día para recuperar su salud; que se abrieron diferentes cuentas corrientes en varias casas de comercio bajo la razón Roig y Colón, y varios actos se realizaron que prueban la realidad de la sociedad y su reconocimiento por Roig, no otorgándose escritura pública ni privada del contrato, pero estaba en la mente de los socios y se facilitaron al Notario las notas sin llevarse á efecto por falta de tiempo disponible; que el actor llevó herra-

mientas en valor de trescientos pesos y á la caja mil ciento ochenta pesos provinciales, afirmando Don José Roig que por su parte aportó á la caja tres mil pesos provinciales, no teniendo la sociedad necesidad de grandes desembolsos porque se echó mano al crédito y pronto se entró á certificar y con lo aportado y el producto de las mercaderías y el pago de las obras ejecutadas, hubo suficiente para continuar y terminar las obras contratadas; que por conveniencia se estableció una tienda de provisiones, mercancías y panadería para servir á los operarios que no bajaban de 400; pero calculando Roig que si era buena cosa para los dos seria mejor para él solo, aguardó ocasión, y llegó è momento merced al atropello de que fué víctima, los duros trabajos y los rigores de la intemperie por lo que cayó enfermo de fiebre y se retiró en 28 de Abril de 1900 para atender á su curación, manifestando á Roig en la última quincena de Abril pasase balance de las obras ejecutadas, inventariara las herramientas y materiales preparados y existencias de la tienda, hízolo Roig y lo comunicó á Colón en 15 de Mayo, manifestando el último no aprobaba el balance é inventario, protestando de sus constancias por ser insuficientes, inexactas y perjudiciales á sus intereses, volviendo Roig en 21 de dicho mes á mandarle una carta ratificando la anterior con los mismos desaciertos poco más ó menos, mediando serias contestaciones según la correspondencia que presenta y llegó el rompimiento; el 24 de Junio del año referido, restableció Colón de su enfermedad se dirigió á las obras para ponerse al frente de ellas, pero fué desconocido su derecho, mandándolo Roig á los Tribunales y tratándolo con palabras indecorosas, entre ellas, públicamente de ladrón y que iba á arrancarle quinientos pesos y no le pisara mas las obras protestando Colón, que quedó desautorizado ante los obreros, disponiéndo el demandado de todas sus pertenencias como lo hizo con la tienda establecida de común acuerdo; que las cuentas de Roig acusan omisiones y ocultaciones reduciendo el activo para engañar á Colón; y que llamado á juicio de conciliación no compareció; siendo el derecho los artículos 1091, 1278, 1279, 1667, 1680, 1682, 1700, 1705 y 1707 del Código Civil, la sentencia del Tribunal Supremo de 12 de Mayo de 1897, y ser temerario el proceder de Roig Colomer.

3º. *Resultando*: que admitida la demanda en 17 de Julio de 1901 y conferido traslado de ella, contestó el demandado pidiendo se declare sin lugar la demanda con las costas, sentando como hechos que Ereño obtuvo por subasta la contrata de obras de la carretera entre Caguanitas y Bacupey por treinta mil pesos como único contratista; que cedió á Roig Colomer por contrato particular á destajo la parte .

de Caguanitas á Caniaco, da próximamente la mitad de su tarea de
construcción; que Roig había dado principio á las obras cuando Colón
valiéndose del Sr. Alonso Ruiz reiteró sus instancias de colocación en
obras públicas, y por consideración personal á Alonso y por suponer
le fuera útil de alguna manera, se decidió á admitir su concurso en
los trabajos; que en una de las entrevistas de los interesados con Alon-
so expresó el demandante su deseo de formar una sociedad y Roig im-
puso condiciones sin las cuales no habría contrato social, siendo una
de ellas aportar inmediatamente tres mil dollars, oponiendo Colón te-
nia café depositado en Ponce, que lo realizaría y sin pérdida de tiempo
entregaría tres mil pesos de aportación social; requerido por Roig pa-
ra la venta del café y entrega del dinero, Colón le propuso estable-
cer una tienda donde los trabajadores pudieran proveerse, alardeando
de credito en varias casas de comercio de esta Capital, y apenas ter-
minados esos ensayos, simples proyectos condicionales, presentarse en
Utuado en el sitio de las obras á cuyo frente estaba Roig llevando
provisiones y efectos según facturas tomadas con el nombre descono-
cido y no concertado de Roig y Colón y acompañado de un largo sé-
quito de auxiliares allegados suyos que habian de encargarse de la pe-
queña tienda; que Roig se negó á presencia del que lo recomendaba
Don Alonso Ruiz á tener por socio á Colon hasta que se le aportara lo
que se le fijó como indispensable, designándose como mediador á dicho
Ruiz, y dos dias despues de llegar á Utuado se le presentó con el per-
sonal referido, pero poco después cobraban á Don José Roig Colomer
las facturas tomadas por Colón, y tras ellos desordenes en la tienda que
hicieron sospechar á Roig de la fidelidad de uno de los dependientes,
falto de la rectitud necesaria, lo que le obligó á despedirle; que Colón
tomaba sucesivamente cantidades de la Caja, que figuran en su cuenta
corriente; que el 20 de Enero lo requirió para la entrega de los tres
mil dollars, y contestó le era preciso pasar á Ponce á realizar el café
que alli tenia y en esas condiciones llegóse á la segunda quincena de
Febrero, y no siendo posible continuar porque los pagos de las fac-
turas mencionadas y la liquidación referida era precisa, vióse obligado
á requerir á Colón para que optase por retirarse de las obras ó cum-
plir lo prometido; que á los pocos días á duras penas entregó Colón
mil ciento ochenta pesos que le fueron acreditados en su cuenta, pues
no hallándose aún formada la sociedad, Roig seguía la contabilidad á
su nombre personal exclusivo, notificándolo así por cartas á diferen-
tes casas de comercio; que el carácter duro y aspero de Colón con los
jornaleros provocaba disgustos, disturbios y huelga, y uno de los alba-
ñiles llegó con el á las manos por lo que lo reconvino y persuadido Co-

lón, decidió retirarse y pusieron ambos de comun acuerdo termino á todos sus proyectos de sociedad, recibiendo el actor en el acto de Roig los mil ciento ochenta pesos que habia depositado para formar su aportación social, en una orden por mil pesos y los ciento ochenta en dinero, quedando lo que habia tomado pendiente hasta la liquidación de los trabajos hechos, ofreciendo pasarle las cuentas oportunas; que no había sido posible concertar la sociedad con tales procedimientos; que Roig liquidó y cerró la tienda con pérdida de cuatrocientos pesos despidiendo á los empleados, remitiendo á Colón su cuenta personal y el resultado del balance; que éste adujo reparos que fueron contestados disponiéndose á subsanar y corregir otros, no volviendo á saber más de él hasta dos meses después que se presentó acompañado de un señor apellidado Griffo, ordenándole en tono imperativo pagara á su acompañante quinientos pesos que le adeudaba, lo que Roig se negó por no tener allí dinero, y como se alterara y amenazara, indignado el demandado lo echó de la casa y dió parte al juzgado; siendo el derecho los artículos 1614, 1681, 1682, 1686 y 1707 del Código Civil que las condiciones suspensivas del contrato le impiden nacer mientras no lleguen á realizarse y que el litigante temerario debe ser condenado en costas.

4º. *Resultando*: que abierto el juicio á prueba, de la del actor aparece confesando el demandado que á instancias de Don Pedro Alonso Ruíz tuvo una conferencia con el demandante para formar una sociedad, indicándole para ello habia de aportar seis mil pesos de capital para ser socio, lo que pasó en Diciembre de 1899; que Colón no tuvo intervención alguna en los tratos que celebró el declarante con Ereño, reconoce la carta de 3 de Enero de 1900 que remitió á Colón y es como sigue: "Tengo arreglado, mejor dicho, concluido el negocio de ejecutar las obras necesarias desde Caguanitas al paso de Caniaco. Ereño estuvo implacable pero en atención á los precios señalados á las unidades y deseoso de trabajar con provecho, no tuve inconveniente en aumentarle hasta el doce y medio, tipo á que quedó cerrado el negocio. Véngase seguido que aquí lo espero, pues hasta el Martes no regresaré á Utuado para mensurar el principio de las obras que ha de ser antes del 15 del corriente y aquí hay que comprar herramientas y útiles lo que no quiero hacer sin que esté U. aquí para marchar de acuerdo", declarando no ha constituido nunca la sociedád Roig y Colón ni hablase con Nater sobre el otorgamiento de la escritura; que los trabajos empezaron el 15 de Enero de 1900; que Colón fué á las obras el 16 al mediodia y empezó á entenderse del 17 en adelante; que en sociedad pusieron una tienda de mercancías, provisiones y panadería; que se

inscribió en el libro de matrículas de Utuado á nombre de Roig y Colón contando que Colón haria la aportación convenida; que los *Checks,* proveyéndose la constitución de la sociedad, que no llegó á efectuarse, llevaban el sello Roig y Colón hasta que viendo no cumplia éste, quemó el sello en la segunda quincena de Marzo; que Colón no estuvo trazando ni replanteando por no ser su oficio y si carpintero, y que si éste construyó la Iglesia de Utuado fué bajo la dirección de Don Pedro Alonso, como albañil y carpintero; que el declarante estuvo al frente de la administración y dirección de las obras; que cuando el segundo convenio con Ereño, Colón no estaba en las obras; que con lo cobrado á Ereño se pagaron las cuentas desde el 15 de Enero hasta el último de Febrero de Roig y Colón procedentes de las obras; expresa los que en la tienda trabajaron colocados y traidos por Colón, quien el 10 de Febrero aportó mil ciento ochenta pesos que trajo de Ponce y le fueron abonados á su cuenta, devolviéndosele después con otras cantidades en 10 de Abril; que trajo á la obra varios utensilios de carpintería de valor que desconoce y un montón de hierro; que al retirarse Colón por unas bofetadas que le dió un albañil, le dijo no podia continuar así, se pasó un balance y se le adjudicó el 9 de Abril lo que le correspondía por sus servicios, que el Domingo de Ramos, por estar ausente el que declara, Colón pagó los peones y dejó la llave de la caja á Arturo Colón, no sabe si ese día vió ó no el actor los libros de la caja; que el 14 de Mayo entregó al hijo de Colón para que lo llevara á su padre un pródigo inventario y balance; que el 15 de Mayo no recibió carta alguna rechazándolo y si haciendo observaciones á las que se allanó.  Reconoce las cartas de 8 al 11 acompañadas con la demanda por él firmadas y dirigidas al demandante y son del 17 y 21 de Mayo, diciendo la primera en lo esencial que "al proponerle la formación de una sociedad le habló en términos claros y precisos, y como parece los ha olvidado le repite que la naturaleza de las empresas que se proponían emprender requerían ante todo capital efectivo y concretando al punto del negocio hecho por el declarante con Ereño, ya dije á V. terminantemente se necesitaban seis mil pesos en dinero, por lo tanto de querer V. participar de los beneficios tenía que afrontar tres mil pesos; dije también de ese capital no podía disponerse para gastos de familia ni para cualquier otro asunto particular.  Las observaciones que hace al inventario atenderé todas las que sean justas y particularmente cuantas omisiones involuntarias se hayan hecho, no así á lo de las obras pues hasta el día 10 unicamente en los días laborables comprendidos, es que asigno la parte de beneficios que le corresponden" y la segunda, "Tengo el gusto de enviarle el resultado del

balance de la tienda y la cuenta de Ereño. Por error involuntario dejó de abonarse el importe de jornales en la brigada del Ingeniero del 3 al 11 de Abril, incluidos en la última certificación de obras y ascendentes á ciento cuatro pesos ochenta y dos centavos moneda provincial''; que Colón no se ha presentado nunca ni el 24 de Junio á hacerse cargo de las obras y sí á reclamar quinientos pesos amenazándolo; que es incierto se efectuaran compras en las casas que cita de esta capital por cuenta de Roig y Colón, y sí por éste usando el nombre de la sociedad; que dirigió una carta á Abarca en la que usó el sello Roig y Colón, creyendo en aquella fecha que la sociedad podría constituirse, reconociendo esa carta por ser suya la firma; que después del segundo destajo no estuvo frente á frente de Ereño; que ántes del trabajo que hizo en unión de Ereño, no hizo ninguno con la Administración; que ni por cartas certificadas ni por documentos notariales exigió de Colón la aportación del capital, pero sí se lo pidió verbalmente repetidas veces; declarando el Tribunal impertinentes las preguntas siguientes: 1ª. Como es cierto que terminado el segundo destajo de los dos que hicieron de cuenta de Ereño, el declarante se presentó á hacer ofertas para las demás obras que se contrataban encontrándose frente á frente de Ereño, que continuaba haciendo ofertas como hasta entonces había hecho''; y 2ª. ''Como es cierto que en ninguna de los posturas que hizo en los trozos de la carretera de Utuado á Arecibo obtuvo la buena pró'' consignándose la protesta de indefensión hecha por el defensor por declaratoria de impertinencia.

5°. *Resultando*: como cauge de prueba del actor: 1°. Los números del periódo ''La Corespondencia de Puerto Rico'' del 25 y del 30 de Marzo de 1900, éste para que se tenga presente al declarar Carlos Ereño y el otro para tener presente el suelto que lleva por rubro ''Motivos de las huelgas''; requeridos el Alcalde y depositario Municipal de Utuado poniéndoles de manifiesto la certificación por el primero librada ''de haber examinado la matrícula de industria y comercio de 1899 á 1900 y resultar alta del tercer trimestre y aparecer inscritos los Sres. Roig y Colón con un establecimiento mixto en el barrio de Rio-abajo de este término (se refiere á Utuado) cuya alta tuvo lugar en 24 de Enero de 1900. Que en 14 de Abril pasó Don José Roig Colomer aviso de haber vendido el expresado establecimiento á Don Bartolomé Alzamora habiendo satisfecho la referida sociedad por el tercer y cuarto trimestre quince dollars treinta centavos al Municipio'' leyéndose al pié de dicho documento ''Recibí 85 centavos oro''.—El Depositario T. Fontan Correa, conteniendo además el sello de la Alcaldía y el de la Depositaría en costado y pié de sus respecti-

vas firmas, declarando los requiridos que el documento es auténtico, guarda conformidad con los asientos de los libros á que el mismo se contrae; 3º Cotejada la certificación de conciliación resulta conforme; 4º. Requeridos Pizá Hermanos para la presentación del libro copiador de cartas y cotejarlas por dicha casa remitidas á los Sres. Roig y Colón en 14 y 29 de Marzo de 1901 recomendándoles la factura de contado de Enero 8 que estimaban cobrar á la brevedad posible, resultaron conformes en un todo, discrepando sólo en la fecha del año por ser el copiador de 1900 y pertenecer dichas cartas á este año, no apareciendo firmadas las copias en el libro por no ser, según Pizá, costumbre; 5º. Requeridos Sucesores de Roses y Compañía para la exhibición de sus libros y sacar copias de los asientos del Mayor y Diario de la venta de una partida de arroz á la sociedad Roig y Colón en 1900, expuso que Don José Roig Colomer en 16 de Marzo compró sesenta sacos de arroz que retiró en 16, 17 y 21 y pagó el 9 de Mayo, valor seiscientos cuarenta y cuatro pesos veinte y seis centavos, no apareciendo de los libros asentada la venta de arroz que refiere el requerimiento; 6º. Constituido el Sécretario del Juzgado Municipal de Catedral en el establecimiento de Villar y Compañía, requerido exhibió los libros de comercio y en el Diario aparece el asiento siguinte: A caja—409—José Roig Colomer.—Su carta o/fr Jaime Colón—1.000 ; y en el Mayor, Abril 27—67—1000, presentando la carta orden de aviso de 24 de Abril de1900 que dice: ''Como les indiqué que quizás me viera en la necesidad de girar, hoy habiendo disuelto la sociedad que tenía establecida con Don. Jaime Colón para la construcción de estas obras he dispuesto hacerlo en orden á cargo de Uds. y favor de mi dicho exsocio Colón por mil pesos moneda corriente, que espera tenga la acogida dispensada á mis giros.—José Roig Colomer.''

6º. *Resultando* : además de esa prueba del actor: 1º. que requerido el demandado para que presentara la carta que en 15 de Mayo de 1900 dice le fué dirigida por Don Jaime Colón apercibido de lo que hubiere lugar, constando fué requerido cuatro meses antes para ello, expuso se le ha extraviado sin que le haya sido posible encontrarla; 2º. que procedido al cotejo del balance é inventario que pasó Don José Roig Colomer á Don Jaime Colón con la demanda acompañado con el libro presentado por el primero, no fué posible por no concordar las partidas insertas en el expresado libro con las del extracto de la cuenta, manifestando el defensor del actor que deben existir otros libros, contestando el del demandado que ese sólo libro le ha sido entregado por su parte, procediéndose á la práctica de la otra prueba del actor y son las tres cuentas pasadas por Roig y Colón, un extracto

de cuenta de gastos generales, otra de Don Cárlos Ereño, á Don José Roig Colomer, otra que dice: "cuenta de Don Jaime Colón con Don José Roig Colomer, resultando que los asientos insertos en las cuentas no corresponden con el libro presentado por no encontrarse aquéllas partidas, protestando el defensor del demandante por no haberse presentado los libros y carta original para lo que fué requerido según consta de autos, ordenando el Tribunal á instancia de los letrados de las partes, se practicara nuevamente la prueba de libros y carta, llevándose á efecto del 6 al 12 de Diciembre de 1902, presentando el demandado el único libro que dice posee y en el cual agrega se encuentran las partidas y antecedentes interesados, haciendo constar el Secretario no reune los requisitos del Código de Comercio ni autorización alguna para abrirlo, y confrontado el balance é inventario con el libro, manifestó Roig Colomer que el inventario no puede ofrecer resultado alguno porque es una simple relación de herramientas y efectos que tenían en su poder los distintos capataces y empleados de la obra y se formuló por la retirada de las obras de Colón haciéndose constar por ello no se pudo efectuar la comprobación; procediéndose á practicar la del extracto de la cuenta de ganancias y pérdidas desde el 15 de Enero de 1900 en que dice principiaron los trabajos hasta el 14 de Abril de dicho año, encontrándose no concuerda la partida de "certificaciones" con la de la cuenta dando la del libro un balance de 13,920.97 mientras la cuenta es 13,183.08 sin la de mil trescientos diez y ocho pesos 30 centavos; Carlos Ereño los ciento cinco pesos 34 centavos y no figuran en el libro la de trescientos veinte y nueve pesos cincuenta y ocho centavos, estando conforme la demostración de los beneficios á realizar y el Resúmen, no figurando en el libro los ciento quince pesos y un centavo de la nota de gastos de escritorio que dice lo componen la mayor parte talonarios y libretas se hallan invertidas; confrontando el inventario general de existencias en la sección carretera de Caguanitas á Caniaco hoy 14 de Abril de 1900, concuerda en un todo con el libro, la de folio 74 de autos Don Jaime Colón con Don José Roig Colomer es una copia del libro con las variantes siguientes, la de veinte y cinco pesos de la cuenta en el haber no figura en el libro figurando en este cuarenta y cinco descompuesta en dos partidas una de veinte y otra de veinte y cinco; la de once pesos del libro varía en fecha en la cuenta, la de veinte y siete pesos del debe no tiene en la cuenta el mismo detalle; la de treinta y seis pesos noventa y dos centavos del debe no se encuentra en la cuenta; la cuenta de Ereño no coresponde con los libros por decir Roig se llevaba en una libreta; la de gastos generales es copia del libro.

7°. *Resultando*: de la prueba testifical del demandante que diez testigos declaran, exponiendo cuatro fueron empleados de Roig y Colón, que en la tienda se aceptaban los *checks* sellados con la marca Roig y Colón; dos de ellos que la tienda giraba bajo ese nombre, otro además de los cuatro oyó decir que el trabajo lo hacían Roig y Colón, que la sociedad tenía una tienda mixta, vió trabajar á Colón que dirigía la carretera; otro sabe existía la sociedad por unos *tickets* que daban con el sello Roig y Colón, confirmando el Inspector de las obras el trabajo de Colón quien los dirigía recibiendo las instrucciones del Ingeniero del Gobierno, haciendo el trazado y no sabe si le consta si Colón era socio ó empleado de Roig si bien al principio oyó decir era socio, manifestando otro de los testigos que Roig le presentó á Colón diciéndole era su socio y ha visto los *checks* con el sello Roig y Colón.

8°. *Resultando*: finalmente, de la prueba del demandante la certificación del Dr. Don Francisco Sulsona que ante la Corte de Distrito de Arecibo declaró es auténtica reconociendo su firma y rubrica, cuya certificación expresa que prestó asistencia facultativa á Don Jaime Colón desde el 13 de Abril de 1900 y padece fiebre intermitente palúdica que le impide dedicarse á sus ocupaciones habituales, encontrándose en la fecha de dicha certificación, 25 de Junio de 1900, en el período franco de la convalecencia, y de la declaración de Don Pedro Alonso Ruíz, prestada en su casa por encontrarse enfermo, ante el Juez Presidente, aparece que á la casa en que vivía concurrieron Don José Roig Colomer y Don Jaime Colón para formar una sociedad, capital tres mil pesos cada uno, objeto la construcción de un trozo de carretera cedido por Ereño á Roig, ignorando si se habían empezado los trabajos por Roig cuando Colón vino á que lo recomendara para poder trabajar en ellos y de esto surgió la sociedad, deseo expresado por ambos de formarla; que después de un mes de la entre vista habló el declarante con Roig, quien le manifestó que Colón nada había aportado sin embargo de estar trabajando en ellas y tomando dinero para sus gastos particulares, ofreciendo en la entrevista referida realizar Colón el café que tenía depositado en Ponce, en la que hablaron igualmente ofreciendo Colón su crédito con varias casas de la Capital pero no saben lo que acordaron porque esto sería objeto de las condiciones del contrato social, siendo cierto propuso Colón el establecimiento de una tienda para el peonaje á lo que mostró Roig repugnancia por la dificultad de hallar personal idóneo y honrado y otras razones, que Roig encomendó al declarante la redacción del proyecto de sociedad manifestando interés tanto él como Colón pero el declarante se negó á formar los bases por creerlo propio y exclusivo de las dos partes inte-

resadas, y preguntado contestó oyó hablar á ambos interesados de la escritura de sociedad que había de otorgar el Sr. Náter pero Roig significó que no habiendose consignado por Colón los tres mil pesos de que se ha hablado, era imposible otorgarla faltando la base principal que era el capital social, contestando á repreguntas de Colón que no puede precisar le fecha en que oyó hablar de la escritura porque no tenía interés en conservar ese dato.

9°. *Resultando* : de la prueba del demandado que el actor confiesa que en Diciembre de 1899 ya tenía relaciones con el contrario pues pensaban tomar la construcción de los ferrocarriles eléctricos, nunca celebró por escritura contrato de sociedad con Roig y no es cierto que Alonso Ruíz le recomendara no conviniendo nunca entrar de auxiliar en la construcción de la carretera, ni le suplicó le admitiera como socio, pues convino con él formar la sociedad sin fijar tipo de capital más que el dinero necesario para su desenvolvimiento; que además de los mil ciento ochenta pesos entregó cuatrocientos pesos en herramientas y ochenta pesos en café á la tienda; que Roig no lo ha requerido para entregar hasta tres mil pesos; que estuvo en casa de Pizá, Egozcue y Cuétara sólo y con Roig en la de Santisteban á comprar mercancías, provisiones y herramientas, abriéndose las cuentas á nombre de Roig y Colón por orden del declarante; que no es cierto que después de aportadas las cantidades dichas tomara para sostener á su familia, y sí para sus necesidades personales pidiéndoselas á Roig; que se abrió la tienda mixta y panadería por cuenta de Roig y Colón, nombrándose los empleados de mutuo acuerdo; no sabe si la tienda fué cerrada después porque estuvo enfermo y lo supo al pasarsele el inventario y balance; que en las obras quiso haber huelgas por los *checks* y unas raciones de los peones; que el albañil Martínez se le presentó en la carretera, le provocó intentando agredirle y dándole un pequeño rasguño; no es cierto se retirase ese día de las obras y sí el Viernes Santo de 1900; que estuvo allí en 23 de Abril regresando enfermo el 24 y el 23 de Junio estuvo en la oficina con el Sr. Griffo volviendo el 24 con dicho señor ordenándole á Roig entregara con cargo á su cuenta quinientos pesos á Griffo, contestándole no pagaba, no siendo cierto las frases que Roig expone, dijo el declarante, por lo que protestó él y no Roig, promoviéndose un altercado en la carretera; que Roig no le pasó cuenta al retirarse de las obras y sí en Mayo un extracto de balance é inventario como socio; que no es cietro que Roig le entregase los mil ciento ochenta pesos que aportó á la sociedad ni que percibiera los ciento ochenta pesos en efectivo y sí que en Abril

recibió un giro contra Villar por mil pesos y en 24 del mismo mes cien pesos para sus gastos.

10°. *Resultando*: que requeridos, á instancia del demandado, Sres. Roses y Compañía para que presentaran copia de una carta dirijida por Don José Roig Colomer la exhibieron y es de 24 de Marzo de 1900, la que dice: no estando constituida la sociedad Roig y Colón y si el Sr. Colón mi auxiliar para la construcción de las obras, ruégoles se sirvan anotar á mi sólo nombre los cincuenta sacos de arroz que á mi paso les compré; requerido Villar y Compañía para la presentación del giro á Don Jaime Colón lo exhibieron y dice: Utuado Abril 24, de 1900. Ruégoles se sirvan mandar entregar á Don Jaime Colón ó á su orden mil pesos provinciales que cargarán á mí cuenta según aviso de esta fecha. José Roig Colomer.—Páguese á la orden de Roses y Compañía valor recibido. Arecibo Abril 26 de 1900.—Jaime Colón.—Páguese á la orden de Mullenhoff y Korber valor en cuenta.—Sucesores de Roses y Compañía. Recibimos pp. Mullenhoff y Korber, Eword; requeridos Pizá Hermanos manifiestan que en 28 de Febrero de 1900 se abrió en el establecimiento una cuenta de Roig y Colón la cual se cerró en 9 de Abril del mismo año recordando que el importe de la misma lo pagó Don José Roig Colomer pero el recibo se extendió á Roig & Colón pues así figuraba la cuenta; constando el mismo requerimiento y contestación de los Sres. Cuétara Hermanos y Don Manuel Egozcue.

11° *Resultando*: que de la prueba testifical del demandado aparece han declarado cinco testigos manifestando dos fueron colocados por Roig expresando uno de éstos que el único director era Roig y Colón su auxiliar, oyó decir se tenía proyectada una sociedad, que por escándalos y disgustos cerró la tienda, que por la conducta de Colón hubo disgustos y huelgas, que iba Colón con él cuando lo del albañil y por ese disgusto se fué de las obras Colón, despidiéndose del personal y tomando con él una botella de brandy; y el otro testigo de los dos referidos, que Colón dirigía los trabajos del camino; que cerca había una tienda de Roig y Colón, que la cerró Roig por los desordenes; que presenció el disgusto del albañil con Colón, que éste se retiró de las obras y no presenció lo de la botella de brandy; un tercer testigo, capatáz nombrado por Roig, dice allí trabajaba Colón en el desmonte y no sabe si era socio ó empleado, pero dirigía los trabajos; no constando nada apreciable de las declaraciones de los otros dos testigos.—Siendo Ponente el Juez Presidente Don Juan Morera Martínez.

1°. *Considerando*: que los contratos serán obligatorios cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos con-

curran las condiciones esenciales para su validez, y si la ley exigiere el otorgamiento de escritura ú otra forma especial para hacer efectivas las obligaciones propias de un contrato, podrán los contratantes complerse recíprocamente á llenar aquélla forma desde que hubiese intervenido el consentimiento y demás requisitos necesarios para dicha validez, según lo prescriben los artículos 1278 y 1279 del Código Civil anterior, 1245 y 1246 del revisado.

2°. *Considerando*: que la sociedad civil se puede constituir en cualquier forma, salvo que se aportaren á ella bienes inmuebles ó derechos reales, en cuyo caso será necesario, no sólo la escritura, si que debe hacerse un inventario de ellos que deberá unirse á la escritura, por cuya razón no son necesarios á la sociedad los requisitos que el Código de Comercio exige á las mercantiles ó sea la escritura pública y su presentación en el registro público de comercio para su inscripción; siendo la concurrencia ó no de estos requisitos, en muchos casos, la única nota que puede hacer distinguir si la sociedad es mercantil ó es civil.

3°. *Considerando*: que apreciada en conjunto la prueba practicada, demuestra evidentemente existió la sociedad para una empresa señalada, constructora del trozo de carretera desde el puesto ''Caguanitas'' de Utuado hasta el paso de ''Camiaco'', estableciendo dicha sociedad una tienda de provisiones, mercancías y panaderías con el fin de servir al peonaje que en la obra trabajara para que pudiera surtirse de lo necesario, evitándoles las molestias de la distancia; tienda que fué dada de alta en la Alcaldía del pueblo de Utuado en 24 de Enero de 1900, constando en la matrícula de Industria y Comercio del tercer trimestre de 1899 á 1900 inscrito bajo el nombre de ''Roig y Colón'' dicho establecimiento, y haber satisfecho esa sociedad el tercero y cuarto trimestre del mencionado año al Municipio.

4°. *Considerando*: que esa constancia, la entrega por Colón á Roig de los mil ciento ochenta pesos que el último ha confesado recibió el 10 de Febrero, los utensilios de carpintería y montón de hierros por el primero aportados, la remisión por el demandado al actor del inventario, del resultado del balance de la tienda y las cuentas por Roig á Colón, ofreciendo aquél atender á las observaciones justas y omisiones involuntarias por el segundo hechas, la carta orden de aviso de 24 de Abril de 1900 remitida por Roig á Villar y Compañía con toda la demás prueba apreciada en conjunto, convencen de la existencia de dicha sociedad entre demandante y demandado.

5°. *Considerando*: que para determinar la constitución del contrato de sociedad civil hay que tener en cuenta si en él concurren ó nó

los elementos personales, reales y formales propios del mismo; y existiendo capacidad en·las personas para obligarse, siendo el objeto que se propuso la sociedad lícito y no siendo. precisa la escritura pública, según se deja sentado, por no haberse aportado á ella bienes inmuebles, poco importa el establecimiento de provisiones, mercancías y panadería que establecieron por ser esto accidental al contrato de sociedad, siendo el esencial ó el objeto de ésta, la construcción del trozo de carretera citado; por cuya razón ni por el orígen ni por el objeto, ni por sus fines, puede influir en la existencia de la sociedad la creación del referido establecimiento ni en los derechos y deberes de los socios entre sí.

6º. *Considerando*: que constando como base del contrato la asociación del trabajo para un objeto determinado, poco ó nada puede influir el no constar el acuerdo en cuanto á la aportación de un capital determinado, dado el artículo 1665 del Código anterior y 1567 del vigente, y la confesión del demandado de haberle entregado Colón los mil ciento ochenta pesos expresados en Considerando anterior deducido del contenido de los Resultandos por cuyas razones y las antes sentadas, no sería justa una declaración de nulidad de las estipulaciones y actos realizados, por falta de un documento que la ley no exige y la prueba convincente que existe hace innecesario.

7º. *Considerando*: que no se han justificado por el demandado las razones y motivos legales para que la sociedad quedara disuelta en la fecha en que Roig Colomer la llevara á cabo, no siéndolo ni pudiendo serlo la enfermedad que sufriera Colón desde el 15 de Abril de 1900. dada la certificación facultativa que contiene el 8º. Resultando, y que si en algo podía esa enfermedad perjudicar á la sociedad, eso no es motivo de disolución y si de tenerse en cuenta en la liquidación de utilidades.

8º. *Considerando*: que recibidos pór Don Jaime Colón los mil ciento ochenta pesos por él aportados á la sociedad y no habiendo justificado las otras utilidades que pudieran obtenerse dentro del contrato á justa regulación de peritos, estos extremos de la demanda deben declararse sin lugar, y en ese caso las costas deben ser sin especial condenación.

*Fallamos*: que debemos declarar y declaramos con lugar la demanda en los extremos siguientes: que la sociedad civil constructora de Roig y Colón quedó rota y disuelta por actos exclusivos é ilegales de Don José. Roig Colomer; que éste está obligado á rendirle cuenta comprensiva de todos los gastos y utilidades de la sociedad hasta el día en que terminó el contrato de destajo con Don Cárlos Ereño del trozo

que se deja expresado, debiéndole entregar las utilidades hasta ese día referido; y en el montante que de estos resulte condenamos á Don José Roig Colomer, debiéndose para fijarlo seguirse los trámites del artículo 931 y siguientes de la Ley de Enjuiciamiento Civil; declaramos sin lugar la demanda respecto á la entrega del capital aportado por Colón, por habersele devuelto por Roig, y respecto á las otras utilidades que pudieran obtenerse dentro del contrato por no haberlas justificado, de cuyos dos extremos absolvemòs al demandado, sin especial condena de costas. Así por esta nuestra sentencia, definitivamente juzgando, lo pronunciamos, mandamos y firmamos.—Juan Morera Martínez.—Frank H. Richmond.—Angel García.   •●

El Juez Asociado que suscribe formula en estos autos su voto reservado de la manera siguiente: Aceptando los Resultandos de la sentencia en cuanto no se opongan á los Considerandos insertos á continuación; y

*Considerando*: que el contrato de sociedad civil existe desde que dos ó más personas se obligan á poner en común dinero, bienes ó industria con ánimo de partir entre sí las ganancis y dicho se está que habiéndose retirado Colón de las obras en 28 de Abril de 1900 y habiendo percibido más tarde en un giro sobre la casa de Villar el importe de la parte de capital que aportó á la sociedad, sólo tiene derecho á percibir las utilidades de la sociedad en la parte correspondiente hasta aquella fecha, pués de aceptarse la hipótesis contraria, vendriamos al extremo de que tendría una persona derecho á los beneficios de una sociedad en la que no tenía capital aportado, ni á la que tampoco aportaba su industria ó colaboración personal.

*Considerando*: que de la prueba apreciada en conjunto, se deduce la existencia de un contrato informal convenido entre las partes para llevar á efecto la construcción de un trozo de camino cedido á destajo por Cárlos Ereño á Roig Colomer; que una de las condiciones establecidas para la formación de la sociedad fué la de que cada uno aportara á la misma la suma de tres mil pesos, condición que al empezar los trabajos no se había cumplido y de que se prescindió sin renunciarla definitivamente, y que la falta de cumplimiento por parte de Colón á esta condición constituyó causa justa de disolución de la sociedad. Debo declarar y declaro con lugar la demanda, en los extremos siguientes, y sin lugar en todos los demás, sin especial condena de costas: primero, que entre 10 de Enero y 24 de Abril de 1900 existía una sociedad para las obras de construcción del trozo de carretera comprendido entre el puente de Caguanitas hasta el paso de Caniaco y que cada socio tuvo derecho á participar de las utilidades obtenidas del cobro de las cer-

tificaciones expedidas por obras ejecutadas en dicho trozo hasta el día 24 de Abril de 1900, en proporción al capital y materiales invertidos por cada uno de ellos en la realización de los trabajos y tienda auxiliar, constando que ambos socios ejercian por igual la intervención y administración de dichas obras: segundo, que Roig Colomer, con arreglo al artículo 27 y siguientes de la Ley de Enjuiciamiento Civil, debe rendir á Colón cuenta de las utilidades realizadas entre las fechas expresadas descuentos pagados á Ereño y todos los demás gastos ocasionados por las obras, el valor de las herramientas y materiales que cada uno aportara al trabajo y á la tienda auxiliar; y tercero, deben repartirse las utilidades líquidas que resulten en proporción al capital y materiales aportados á la sociedad por cada uno de ellos.—Frank H. Richmond.''

*Resultando*: que contra la anterior sentencia interpuso la representación del demandàdo Don José Roig Colomer recurso de apelación que le fué admitido libremente y en ambos efectos, y que elevados los autos á esta Superioridad con citación y emplazamiento de las partes, y personadas éstas, se dió al recurso la tramitación correspondiente, y se señaló día para la vista, á cuyo acto concurrieron los Abogados defensores de las partes.

Abogado del apelante: *Sr. Hernández López.*

Abogado del apelado: *Sr. Texidor.*

EL JUEZ PRESIDENTE SR. QUIÑONES, después de exponer los hechos anteriores, emitió la opinión del Tribunal.

*Aceptando* los fundamentos de hecho y los cinco primeros de derecho de la sentencia apelada.

*Considerando,* además, que los autos ofrecen también pruebas bastante para declarar que al constituirse la sociedad entre Don José Roig Colomer y Don Jaime Colón, se convino que cada uno aportaría á ella un capital de tres mil pesos en efectivo; que el socio Don Jaime Colón sólo ingresó en la Caja de la sociedad mil ciento ochenta pesos, no habiendo datos suficientes para determinar lo que ingresara el otro socio Don José Roig Colomer; que éste fué el que llevó la contabilidad y el que ejerció la administración de la sociedad mientras estuvo vigente; y que al disolverse ésta, se hizo cargo de todas las existencias de la misma; de donde se deriva lógica-

mente, la obligación en que está de rendir cuenta al otro socio
de la administración que tuvo á su cargo, desde el día en que
empezó á funcionar la sociedad, hasta el día de su termina-
ción, así como su responsabilidad al pago de la parte de utili-
dades que correspondan al socio Don Jaime Colón, si las
hubiere.

*Considerando*: que con arreglo al artículo 1682 del anti-
guo Código Civil, que es el 1584 del vigente, el socio que se ha
obligado á aportar una suma de dinero y no la ha aportado,
es de derecho deudor de los intereses desde el día en que
debió aportarla, sin perjuicio de indemnizar además los daños
y perjuicios que hubiere causado; y que no habiendo ingre-
sado en la sociedad el socio Don Jaime Colón más que mil
ciento ochenta pesos de los tres mil que debió aportar en efec-
tivo, es deudor á la sociedad de los intereses legales de la
diferencia, á razón del seis por ciento anual desde el día en que
comenzó á funcionar hasta su término, habiendo incurrido
en igual responsabilidad el otro socio Don José Roig Colomer
por la parte de capital que dejara de aportar, según lo que
resulte de la liquidación que debe practicarse en su oportuni-
dad para la ejecución de esta sentencia.

*Considerando* que siendo ambos socios personas hábiles y
capaces para contratar, y lícito el objeto de la sociedad, no
procede declararla nula, como pretende la defensa de Don
José Roig Colomer, por no haberse elevado el contrato á escri-
tura pública, lo que no es un requisito necesario para la cons-
titución del contrato de sociedad civil, á menos que á ella se
aporten bienes inmuebles ó derechos reales, lo que no sucede
en el presente caso, en conformidad con lo dispuesto por el
artículo 1667 del Código Civil antiguo y el 1569 del moderno.

*Considerando* en cuanto á las causas de la disolución de la
sociedad, que el actor atribuye á actos exclusivos é ilegales de
Don José Roig Colomer, que semejante afirmación carece
absolutamente de todo fundamento, pues aparte de que el
actor no lo ha justificado, lo que se desprende de las pruebas

es, que la sociedad se disolvió por el desistimiento voluntario del socio Don Jaime Colón, á causa de su mal estado de salud que no le permitía continuar al frente de las obras de la carretera, como lo confirma el hecho de haber retirado el capital que había aportado á la sociedad en efectivo, y que recibió de manos del otro socio Don José Roig Colomer, sin protestas ni salvedades de ningún género, y el compromiso contraido por Roig Colomer de pasarle el inventario y balance de lo sociedad, como lo verificó á los pocos días después de haberse separado Colón de los trabajos, aunque sin resultado alguno por haberselos impugnado Colón y no haber llegado á ningún acuerdo con el otro socio Don José Roig Colomer.

*Considerando* que siendo iguales los capitales que cada uno de los socios debió aportar á la sociedad, además de su trabajo personal, los beneficios que en ella se obtuvieron, así como las pérdidas, deben distribuirse entre los socios por iguales partes; y que habiéndose disuelto la sociedad por voluntario desistimiento de los socios en 24 de Abril de 1900, sólo tiene derecho el socio Don Jaime Colón á percibir la parte de los beneficios obtenidos por la sociedad hasta aquella fecha.

*Considerando* que las costas deben imponerse al litigante cuyas pretensiones sean totalmente desestimadas, y que en otro caso debe el Tribunal resolver sobre ellas con arreglo á equidad según lo ordena en su Sección 63 la Orden General No. 118 de 10 de Agosto de 1899.

*Vista* las disposiciones legales que se citan en la presente sentencia.

*Fallamos* que confirmando, en lo conforme, y revocando, en lo contrario, la sentencia apelada, debemos declarar, y declaramos, que la sociedad civil constructora establecida entre Don José Roig Colomer y Don Jaime Colón, quedó rota y disuelta de mutuo acuerdo y conformidad de ambos socios; que Don José Roig Colomer está obligado á rendir cuenta á Don Jaime Colón de todos los gastos y utilidades de la sociedad,

desde el día en que se constituyó, ó sea desde el primero de
Enero de 1900, en que comenzó sus trabajos, hasta el día de su
disolución, en 24 de Abril del mismo año; debiendo entregarle
la mitad de las utilidades realizadas por la sociedad durante
aquel período, y á cuyo pago condenamos al expresado Don
José Roig Colomer; y ajustándose la liquidación que se prac-
tique á los trámites establecidos por los artículos 931 y
siguientes de la Ley de Enjuiciamiento Civil, incluyéndose en
ella los intereses legales á razón del seis por ciento anual,
sobre las cantidades que dejaron de ingresar ambos socios en
la Caja de la sociedad hasta el completo de sus respectivos
capitales, computados dichos intereses desde el día de la cons-
titución de la sociedad hasta su término; y declarando sin
lugar la demanda en cuanto á la entrega del capital aportado
por Don Jaime Colón y de las demás utilidades á que se refiere
la citada demanda, sobre cuyos particulares absolvemos de
ella al demandado Don José Roig Colomer, sin especial con-
denación de costas de ambas instancias.

Jueces concurrentes: Sres. Hernández, Figueras, Sulz-
bacher y MacLeary.