NEFTALÍ VIDAL GARRASTAZU, demandante y apelado, v. JUAN A. MONAGAS y OTROS, demandados y apelantes.

Núm. 9240.—*Sometido:* Junio 4, 1946. *Resuelto:* Noviembre 12, 1946.

---

*José Sabater* y *J. Benítez Gautier*, abogados de los apelantes; *J. Alemañy Sosa*, abogado del apelado.

### Opinión del Tribunal (¹)

Apelan ciertos demandados de una sentencia declarando con lugar una demanda sobre liquidación de la sociedad Monagas y Vidal. Comoquiera que la defensa principal de los demandados y apelantes que se opusieron activamente a la demanda consiste en que las cuestiones envueltas en el pleito fueron ya juzgadas definitivamente en tres ocasiones distintas, creemos conveniente hacer, en primer término, una historia cronológica de los hechos que aparecen de la prueba, para luego analizar las alegaciones de este caso a la luz de los litigios anteriores.

### I

Allá para el 1905, Juan Monagas, José Arturo Monagas y Ramiro Vidal constituyeron la sociedad Monagas y Vidal, por un término que expiró el 30 de junio de 1924, conviniéndose que en caso de la muerte de algún socio, continuaría la sociedad entre los sobrevivientes y los herederos del socio que falleciere.

Aportaron los socios a la sociedad la hacienda Belvedere, de la cual eran dueños por partes iguales, y se inscribió la

---

(¹) Antes de tener efecto la renuncia del Juez Asociado Sr. Córdova, éste había escrito la presente opinión. Por estar el Tribunal en su receso de verano no fué posible aprobarla antes de que el Juez Córdova cesara en su cargo.

hacienda como propiedad de la sociedad. Murió José Arturo Monagas en el 1915, y Ramiro Vidal en el 1921.

Vidal dejó, además de una viuda y un hijo de cinco años de edad, una sentencia dictada en rebeldía en su contra por $900, en el caso civil número 6889 en la Corte de Distrito de Mayagüez. La sentencia era a favor de José Mora. Dos años después de morir Vidal, aparece Ramón Beauchamps comprando la sentencia y sustituyéndose como demandante. Beauchamps logró entonces se sustituyeran como partes demandadas a la viuda e hijo de Vidal, sin notificar a éstos. Luego procedió a ejecutar la sentencia, vendiendo en pública subasta la tercera parte de la hacienda Belvedere (que como hemos visto pertenecía a la sociedad Monagas y Vidal y no a sus socios). En la subasta Beauchamps se adjudicó la tercera parte de la hacienda (tercera parte que entonces estaba tasada en $14,309.33, que el demandado Monagas admite valía $10,000 y los demandantes alegan valía mucho más) por los $900 importe de la sentencia. Al otro día aparece Juan Monagas comprando a Beuchamps el condominio por $1,602. Monagas logró entonces, no comprendemos cómo, inscribir a su nombre la tercera parte de la hacienda Belvedere, a pesar de que la totalidad de la finca estaba inscrita a nombre de la sociedad Monagas y Vidal.

Un año después, en marzo de 1924, Juan Monagas y la Sucesión de José Arturo Monagas, radicaron ante la Corte de Distrito de Mayagüez, en el caso civil número 10,416, una demanda contra la sucesión de Ramiro Vidal para liquidar la sociedad Monagas y Vidal. Exponía la demanda que la sociedad quedó disuelta "por ministerio de la ley" al ejecutarse la sentencia de $900 en el caso número 6889, que en esa forma perdió la Sucesión de Vidal, y adquirió Juan Monagas, el interés que tenía Ramiro Vidal en la sociedad, que la viuda de Vidal reconocía todo esto, pero que siendo el hijo y heredero de Vidal menor de edad, era necesaria la "intervención del Tribunal".

Se allanó a la demanda la viuda de Vidal, por escrito. Según explica ahora (sin que Monagas la contradiga) firmó el escrito de allanamiento a instancias de Juan Monagas, mientras se encontraba ella recluída en una clínica y confiando en falsas representaciones que le hizo Monagas en cuanto al contenido y efecto del documento.

La Corte, examinada la demanda y el allanamiento, sin oír prueba respecto a los méritos del caso, y sin determinar ni la necesidad ni la utilidad del·allanamiento en lo que al menor hijo de Vidal concernía, dictó sentencia declarando con lugar la demanda, y disuelta y liquidada la sociedad Monagas y Vidal, correspondiendo dos terceras partes de los bienes, o sea, la hacienda Belvedere, a Juan Monagas, una tercera parte a la Sucesión de José Arturo Monagas, y nada a la Sucesión de Vidal.

Desde entonces Juan Monagas y la Sucesión de José Arturo Monagas han venido arrendando la hacienda Belvedere a la Sociedad Tió y Sambolín, por un canon de $10,000 al año más las contribuciones desde el 1926 hasta el 1937, y de $15,000 más las contribuciones·desde el 1937.

Poco después de llegar el hijo de Vidal, aquí demandante y apelado, a su mayoría de edad, radicó una demanda en la Corte de Distrito de Mayagüez, civil número 783, contra Juan Monagas, los herederos de la esposa de éste, la sucesión de José Arturo Monagas y la sucesión de Beauchamps, que se dividía en dos causas de acción y exponía los siguientes hechos: (a) La primera causa de acción alegaba la ejecución de la sentencia contra Vidal en el caso número 6889 que culminó en la adquisición por Monagas de la tercera parte de la hacienda Belvedere que según la demanda pertenecía a Vidal, y alegaba además que la ejecución de la sentencia obedeció a un plan fraguado, por Monagas y Beauchamps con el propósito de defraudar a la Sucesión Vidal, y era nula por no haberse notificado a la Sucesión Vidal de la moción ni de la orden sobre sustitución de partes demandadas, y por

otras irregularidades habidas en el procedimiento; (b) La segunda causa de acción repetía los hechos expuestos en la primera causa de acción, añadiendo alegaciones respecto a la constitución de la sociedad Monagas y Vidal, y exponiendo la demanda, allanamiento y sentencia en el caso número 10416 sobre disolución y liquidación de la sociedad Monagas y Vidal, alegando que tanto la ejecución de la sentencia en el caso número 6889 como la sentencia en el caso número 10416 eran nulas por virtud de irregularidades en el procedimiento, porque obedecían al plan fraudulento de Monagas y Beauchamps de privar a la Sucesión de Vidal de la tercera parte de la hacienda Belvedere que le pertenecía, y porque el allanamiento de la viuda de Vidal a la demanda en el caso número 10416 fué obtenido por Monagas a base de falsas y fraudulentas representaciones. En la segunda causa de acción se dice en un sitio que la hacienda Belvedere pertenecía a la sociedad Monagas y Vidal, pero en otros sitios se dice, como se dijo en la primera causa de acción, que la hacienda pertenecía a los tres socios en común proindiviso. Termina la demanda solicitando la nulidad de los procedimientos habidos en los casos números 6889 y 10,416 y reclamando la entrega a la Sucesión Vidal de la tercera parte de la hacienda Belvedere, y sus frutos desde el 1921.

Juan Monagas y los herederos de su esposa radicaron excepción previa a la demanda en el caso número 783, y la Corte declaró con lugar la excepción previa y dictó sentencia declarando sin lugar la demanda, sentencia que vino a ser firme al desestimarse la apelación del demandante por no haber sido notificada del escrito de apelación la Sucesión de Ramón Beauchamps.[2]

Expondremos brevemente los fundamentos que tuvo la corte en el caso número 783 para declarar con lugar la excepción previa. Convino la corte en que de acuerdo con el artículo 40 del Código de Enjuiciamiento Civil el tiempo du-

_____

[2] *Vidal* v. *Monagas*, 60 D.P.R. 783.

rante el cual el demandante Vidal fué menor de edad no debía computarse a los fines de determinar la prescripción de su acción, a menos que la acción fuera de reivindicación de propiedad inmueble. Pero concluyó la corte que la acción era precisamente de reivindicación de una tercera parte de la hacienda Belvedere, que no debía excluirse por lo tanto, a los fines de la prescripción de la acción, el período durante el cual el demandante fué menor de edad, y que, incluído ese período, la demanda aparecía prescrita de su faz, como aparecía también de su faz la adquisición por los demandados de título prescriptivo a la hacienda Belvedere.(³) Resolvió además la corte que la demanda era insuficiente en tanto en cuanto no ofrecía restituir a Monagas la suma que éste aparece haber pagado a Beauchamps por la tercera parte de la Hacienda Belvedere. Y dijo, sin que ello fuera pertinente a la resolución del caso, que los procedimientos en los casos números 6889 y 10,416 no fueron nulos, sino anulables, y que no podían ser atacados colateralmente.(⁴)

Llegamos finalmente a la demanda en el caso de autos. Expone sencillamente los hechos relativos a la constitución de la sociedad Monagas y Vidal, y la muerte de dos de sus socios; dice que el término de la sociedad expiró el 30 de

---

(³) Para llegar a esa conclusión, hubo la corte de determinar que de la demanda, que imputaba a Monagas fraude y mala fe, aparecía que éste había poseído la finca por más de diez años de buena fe y con justo título.

(⁴) La corte resolvió que la acción era reivindicatoria y que había expirado el período prescriptivo de diez años para entablarla. El resto de su razonamiento en cuanto a prescripción es muy difícil de entender. Entró a considerar si había o no prescrito la acción para anular los procedimientos anteriores, acción que no prescribía durante la minoría de edad del demandante según explicó la corte, y parece haber sido su intención decidir: (1) que la acción era de nulidad, y que los procedimientos anteriores eran anulables y no nulos (2) que por ser reivindicatoria la acción, estaba prescrita la acción de nulidad. Es decir, después de decidir que la acción era reivindicatoria, y por ese motivo estaba prescrita, sin que pudiera estar prescrita ninguna acción que no fuera reivindicatoria, dice la corte que la demanda expone una acción de nulidad que está prescrita. Aparte de que es imposible determinar exactamente lo que resolvió o quiso resolver la corte en cuanto a la existencia y prescripción de la acción de nulidad, e.a innecesaria la conclusión de la corte en cuanto a ese punto, e impertinente la determinación de que los procedimientos anteriores eran anulables y no nulos.

junio de 1924; que no ha sido liquidada; que los bienes de la sociedad a la fecha en que expiró su término consistían de la hacienda Belvedere, de una factoría azucarera, casas, siembras de cañas, ganado, dinero y créditos y que esos bienes han quedado, desde el 1924, bajo la administración del demandado Juan Monagas y de los herederos de José Arturo Monagas, y que el demandante, único heredero de Ramiro Vidal, nada ha percibido de las rentas o beneficios de los bienes. Solicita el demandante se decrete la liquidación de la sociedad Monagas y Vidal, que los demandados rindan cuenta de su administración de los bienes de la sociedad, y traigan al fondo común cualesquiera bienes de la sociedad de que se hubieren incautado, o su valor, y que se lleve a cabo la partición de esos bienes.

Son partes demandadas Juan Monagas, la Sucesión de doña Rosario de la Rosa y Sierra (esposa que fué de Juan Monagas), la Sucesión de José Arturo Monagas, la sociedad Monagas y Vidal, y Juana Garrastazu, la viuda de Ramiro Vidal y madre del demandante. Contestaron la demanda todos los demandados excepto Juana Garrastazu Vda. de Vidal. Los demandados además de negar ciertos hechos de la demanda, alegaron los procedimientos habidos en los casos número 6889, 10416 y 783, invocándolos como decisivos de las cuestiones ahora planteadas por el demandante, y algunos de ellos plantearon otras defensas que oportunamente mencionaremos.

La prueba estableció los hechos que ya hemos relacionado. Resultó de la prueba que los bienes de la sociedad Monagas y Vidal en el 1924 se limitaban a la hacienda Belvedere. Tenía la sociedad obligaciones que no es necesario ahora mencionar. La corte inferior declaró con lugar la demanda, y decretó que se procediese a la liquidación de la sociedad.

Pasemos a considerar la defensa de *res judicata* que invocan los demandados apelantes.

## III

Invocan los apelantes, en primer término, la sentencia dictada en el caso 783 declarando sin lugar la primera demanda del demandante apelado. Alegan que esa sentencia resolvió la controversia que ahora ha planteado el demandante.

██ Pero en el caso 783 la causa de acción era distinta a la que se alega en el caso de autos. En aquel caso se trataba de una acción para reivindicar una tercera parte de la hacienda Belvedere que se decía pertenecía al demandante como heredero de Vidal. La corte resolvió entonces que la acción era puramente reivindicatoria, y precisamente por ser reivindicatoria la declaró sin lugar. Sabemos ahora que el demandante no tenía entonces, ni tiene ahora, derecho a reivindicar una tercera parte de la hacienda Belvedere. *Rosaly* v. *Graham*, 16 D.P.R. 163. La hacienda Belvedere no pertenecía a su padre, Ramiro Vidal, cuando éste murió. Pertecía a la persona jurídica Monagas y Vidal. El derecho del demandante, al morir su padre, vino a ser el derecho a una tercera parte del valor neto que resultara al liquidarse la sociedad Monagas y Vidal. *Rosaly* v. *Graham*, supra. Y eso es lo que reclama el demandante ahora. Su causa de acción es por lo tanto distinta de la que se juzgó insuficiente en el caso 783. Aceptando que en el caso 783 se determinó definitivamente que el demandante no tiene derecho a una tercera parte de la hacienda Belvedere, esa determinación no afecta su derecho a una tercera parte del valor de los bienes de la sociedad Monagas y Vidal y de sus frutos. Particularmente es ello así si recordamos que el caso 783 se resolvió precisamente a base de que la acción del demandante estaba prescrita por ser reivindicatoria de propiedad inmueble, aceptando la corte que no estaría prescrita de ser cualquier otra la naturaleza de la acción.

La conclusión a que hemos llegado en cuanto a la diferencia entre la causa de acción en el caso 783 y la causa de

acción en el caso de autos se fortalece al examinar la sentencia apelada. No se menciona en la sentencia la hacienda Belvedere, sobre la cual versó el caso 783. Se limita la sentencia a decretar la liquidación de la sociedad Monagas y Vidal, y a disponer el nombramiento de un contador partidor para el caso de que las partes no pudieran ponerse de acuerdo. Nada dispone ni declara la sentencia respecto a la hacienda Belvedere. Aunque en la opinión de la corte inferior se dice que carece de mérito la defensa de la Sucesión de Rosario de la Rosa de que ha adquirido título prescriptivo a una tercera parte de la hacienda Belvedere, porque la posesión no se funda en un título verdadero, nada dispone la sentencia respecto a los derechos de dicha sucesión en la hacienda Belvedere. En verdad es prematuro resolver o disponer nada en cuanto a los derechos a la hacienda Belvedere. Y probablemente resultará innecesario a la larga. Lo que se ha decretado es la liquidación de la sociedad Monagas y Vidal. Y se ha determinado que los bienes de esa sociedad consistían de la hacienda Belvedere, y que hay ciertas deudas que tomar en consideración al liquidar la sociedad. Si, como aparece de la prueba, la liquidación va a resultar en la adjudicación al demandante de una participación igual al valor de algo menos de una tercera parte de la hacienda Belvedere, más una tercera parte de las rentas que ha producido esa hacienda desde el 1923, y si Juan Monagas ha dispuesto sin autorización de la sociedad de una tercera parte de la hacienda Belvedere, y esta tercera parte se encuentra en manos de terceros, resultará muy fácil para el demandante lograr que Monagas reponga lo que al demandante pertenece, de la tercera parte de la hacienda que viene poseyendo Monagas y que ha logrado inscribir a su nombre. En cuanto a las rentas de la hacienda, si como aparece de la demanda y no se ha negado, la administración de la hacienda ha estado en manos de Juan Monagas y de la Sucesión de José Arturo Monagas, y Juan Monagas ha

dispuesto de la tercera parte que corresponde al demandante, viene obligado a reponer esa parte. Si los bienes de Juan Monagas no bastaran para ello, entonces habría que resolver si sus hijos y nietos vienen obligados a devolver lo que recibieron en exceso de lo que les correspondía. Esto no lo ha resuelto todavía la corte inferior. Su sentencia se limita a decretar la liquidación de la sociedad Monagas y Vidal. Esa sentencia en nada contradice lo resuelto en el caso 783 respecto a la reivindicación de la hacienda Belvedere. No puede decirse, por lo tanto, que el caso 783 haya juzgado la controversia planteada en este caso.

Aunque, como hemos visto, la sentencia en el caso 783 no es res judicata en cuanto a la controversia planteada en este caso, podría argüirse que sí es aplicable la doctrina de *collateral estoppel*, es decir, que tratándose de las mismas partes y de una controversia que surge de las mismas transacciones de las que surgió el caso 783, lo determinado en el caso 783 obliga a las partes en este caso. La regla de "collateral estoppel" se expresa sucintamente en los artículos 68 y 70 del volumen sobre Sentencias del *Restatement of the Law, American Law Institute,* páginas 293 y 318, como sigue:

"68. *Cuestiones de Hecho.*—(1) Cuando una cuestión de hecho esencial a la sentencia se litiga y determina por una sentencia válida y final, la determinación es concluyente entre las partes en una acción subsiguiente basada en una causa de acción distinta excepto según se dispone en los artículos 69, 71 y 72.

(2) Una sentencia sobre una causa de acción no es concluyente, en una acción subsiguiente basada en una causa de acción distinta, en cuanto a cuestiones de hecho que no fueron litigadas y determinadas en la primera acción."

"70. *Cuestiones de Derecho.*—Cuando una cuestión de derecho esencial a la sentencia se litiga y determina por una sentencia personal, válida y final, la determinación no es concluyente entre las partes en una acción subsiguiente sobre una causa de acción distinta, excepto cuando ambas causas de acción surgieron del mismo asunto o transacción; y en ningún caso será concluyente si ello resultare en una injusticia."

En el caso 783 no llegó a litigarse ninguna cuestión de hecho, luego no es de aplicación el artículo 68 que acabamos de citar. Sí se resolvieron ciertas cuestiones de derecho, pero algunas, como ya hemos visto, no eran esenciales a la sentencia, y las otras, aunque se consideren concluyentes entre las partes, no afectan los derechos que alega el demandante en el litigio actual. En el caso 783 se resolvió la cuestión de derecho de que la acción reivindicatoria de la Hacienda Belvedere estaba prescrita, y se resolvió también la cuestión de derecho de que la demanda de reivindicación de la Hacienda Belvedere era insuficiente en tanto en cuanto no ofrecía restituir a Monagas la suma que éste pagara a Beauchamps por la tercera parte de la hacienda Belvedere. Estas dos cuestiones de derecho son concluyentes para las partes en este caso, pero no afectan la causa de acción que ahora ejercita el demandante ya que no se está ejercitando ahora la acción reivindicatoria que en el caso 783 se juzgó prescrita e insuficiente. La corte en el caso 783 también dijo que los procedimientos en los casos 6889 y 10416 no fueron nulos sino anulables y que no podían ser atacados colateralmente. Pero, como ya hemos visto, esa determinación de la corte en el caso 783 no era pertinente a la resolución del caso, y por esa razón, aplicando la regla expresada en el artículo 70 del *Restatement of the Law* que acabamos de copiar, dicha determinación no es concluyente para las partes en el actual litigio.

Por los fundamentos expuestos entendemos que la sentencia en el caso 783 no constituye impedimento alguno a la acción que ahora ejercita el demandante, ni a base de la teoría de res judicata, ni a base de la teoría de "collateral estoppel."

## IV

Otra sentencia que invocan los apelantes como determinante de la controversia resuelta por la sentencia apelada,

es la dictada en el caso 10,416, sobre liquidación de la sociedad Monagas y Vidal. Dicha sentencia indudablemente versó sobre la misma causa de acción que ahora nos ocupa, y entre las mismas partes. Si fué válida, determinó la controversia en forma adversa al demandante.

■ La sentencia en el caso 10,416 se dictó a base del allanamiento de los demandados, la viuda y el menor hijo de Ramiro Vidal. Ese allanamiento envolvía la renuncia por el menor de derechos que valían muchos miles de dólares. Carecía el menor, y su madre, de facultad para hacer esa renuncia en ausencia de la autorización de una corte de distrito que determinara la necesidad y la utilidad de la renuncia.(5) *Cruz* v. *Central Pasto Viejo Inc.*, 44 D.P.R. 367. Así lo reconoció la parte demandante en el caso 10416, al alegar en su demanda que, por ser menor el hijo de Ramiro Vidal, era necesaria "La intervención del Tribunal." Pero aunque hubo "intervención del Tribunal" esa intervención se limitó, según aparece de la faz de la sentencia, a un examen de la demanda, que por cierto es a todas luces insuficiente,(6) y del allanamiento de los demandados. Ni hubo prueba de la necesidad o utilidad del allanamiento, hecho a nombre del menor, ni hubo siquiera una expresión de la opinión de la corte en cuanto a la necesidad o utilidad del allanamiento. Fué por lo tanto nulo el allanamiento por no mediar la declaración judicial de su necesidad y utilidad, y nula la sentencia, de cuya faz aparece la ausencia de la declaración de necesidad y utilidad y de prueba sobre ese extremo. *Cruz* v. *Central Pasto Viejo*, supra; *Lókpez* v. *Fernández*, 61 D.P.R. 522.

---

(5) El artículo 153 del Código de Comercio que invocan los apelantes, no facultaba a la madre para allanarse a la demanda, por ser dicho artículo aplicable solamente a sociedades mercantiles, y tratarse en este caso de una sociedad civil, según veremos más adelante.

(6) La insuficiencia de la demanda no afecta la validez de la sentencia. Aunque erró la corte inferior al decir lo contrario, siendo la sentencia nula por otros motivos, el error es académico.

No existe, pues, el impedimento a la acción del demandante que se creyó establecer al obtenerse la sentencia en el caso 10416.

## V

Por último invocan los apelantes los procedimientos habidos en el caso 6889 como destructivos del derecho que reclama el demandante. La ejecución de la sentencia en dicho caso, fué nula, en primer término, porque no se notificó a la viuda e hijo de Vidal de su sustitución como partes demandadas, y no adquirió por lo tanto jurisdicción la corte sobre la viuda o el hijo. *Rosas* v. *Bruno Vázquez (Sucn.)*, 41 D.P.R. 143, y véase también el artículo 244 del Código de Enjuiciamiento Civil. El caso de *Santana* v. *Quintana,* 51 D.P.R. 794, que invocan los apelantes, no es aplicable. Allí un demandante cedió su sentencia, y el cesionario obtuvo mandamiento de ejecución, sin sustituirse antes como parte demandante. Se resolvió que no era necesaria la sustitución formal del cesionario para expedir mandamiento de ejecución. Los demandados en dicho caso tuvieron su día en corte antes de dictarse la sentencia en su contra, cosa que no ocurrió en el caso de autos, donde ni la viuda ni el hijo de Vidal fueron notificados ni oídos antes de pretenderse ejecutar una sentencia que no fué obtenida contra ellos.

Los apelantes sugieren que la viuda y el hijo de Vidal se sometieron a la jurisdicción de la corte al radicar, después de la ejecución, una moción para anular los procedimientos por falta de jurisdicción, moción que nunca se resolvió. La contención es frívola. No hay duda que hubo sometimiento a la jurisdicción de la corte para los fines de la resolución de la moción sobre falta de jurisdicción, pero no la hubo, para los fines de convalidar las actuaciones nulas que la moción precisamente impugnaba.

Pero aunque la ejecución en el caso 6889 no hubiese sido nula, resultó académica. Se vendió lo que no existía: el in-

terés de la sucesión de Vidal en la hacienda Belvedere. La hacïenda Belvedere no pertenecía a Vidal, ni a su sucesión, ni en todo ni en parte. Pertenecía totalmente a la sociedad Monagas y Vidal. Por consiguiente la venta, aunque no hubiese sido nula, no podía conferir, ni confirió, derecho alguno a Monagas, ni privó a la Sucesión de Vidal de derecho alguno. Los procedimientos habidos en el caso 6889 no constituyen por lo tanto defensa alguna a la reclamación del demandante.

## VI

■ Otra defensa que interpusieron los apelantes sin éxito en la corte inferior es la de prescripción de la acción del demandante, por haber expirado el término de tres años que fija el artículo 943 del Código de Comercio para acciones del socio contra la sociedad mercantil, y el de cinco años que fija el mismo artículo para acciones en cobro de dividendos o pagos ''que se acuerden por razón de utilidades o capital'' en una sociedad mercantil.

Difícilmente puede sostenerse que se trata aquí de una acción de un socio contra la sociedad, ni de una acción para el cobro de dividendos acordados, pero aunque así fuera, el artículo 943 no es aplicable por tratarse de una sociedad civil, y no mercantil.

De la prueba documental y testifical resulta que la sociedad Monagas y Vidal se organizó para dedicarse a la agricultura, y se dedicó exclusivamente a la agricultura. La sociedad vendía lo que producía su finca: caña, cocos, leña. Cedía terrenos a aparceros y hacía todo lo necesario para desarrollar su empresa agrícola. El hecho de que la sociedad se inscribiera en el registro mercantil, y cumpliera con algún otro requisito que el Código de Comercio exige para sociedades mercantiles, no es importante, cuando el fin a que se dedica la sociedad es claramente civil, como en este caso. 11 Manresa 277, 278; 25 Scaevola 599 *et seq.;* 7 Enciclope-

dia Jurídica Española 363, 364. Compárese *Colón* v. *Roig*, 7 D.P.R. 38.

No se equivocó pues el abogado de los apelantes en el caso 10,416, en que se solicitó la liquidación de la sociedad, al exponer que se trataba de una sociedad civil, ni erró la corte inferior al determinar que es civil la sociedad y por lo tanto que son inaplicables a este caso las disposiciones del artículo 943 del Código de Comercio.

■ Los apelantes insisten, sin embargo, en que de no ser aplicable el artículo 943 del Código de Comercio, es de aplicación el período prescriptivo de quince años que fija el artículo 1864 del Código Civil para las acciones personales que no tengan señalado término especial. Suponiendo que sea aplicable el artículo 1864, no transcurrió el término prescriptivo, ya que la demanda en el caso de autos se radicó a los cinco años de llegar el demandante a su mayoría de edad, y según el artículo 40 del Código de Enjuiciamiento Civil, no se considera a los fines de la prescripción el tiempo durante el cual el demandante fué menor de edad.

## VII

■ Hemos considerado ya todos los errores principales que señalan los apelantes en su alegato. De los otros errores, la mayor parte se refieren a resoluciones de la corte inferior negándose a eliminar partes de la demanda, a conceder especificaciones, a reconsiderar resoluciones, a eliminar partes innecesarias, y a resolver que la demanda era ambigua, y otros se refieren a fundamentos utilizados en la opinión de la corte inferior que no eran necesarios a la resolución del caso. No nos indican los apelantes qué perjuicio pudieron haber sufrido con los errores alegados. Por nuestra parte estamos convencidos de que no hubo perjuicio alguno, por lo que es innecesario entrar a considerar dichos errores. Sí merecen breve consideración algunas cuestiones adicionales que han suscitado los apelantes.

 Sostienen los apelantes que la acción del demandante en este caso no debe prosperar porque en su demanda omitió referirse a los procedimientos habidos en los casos 6889, 10416 y 783. En apoyo de esa proposición citan el caso de *Sucn. Orcasitas* v. *Sucn. Orcasitas,* 21 D.P.R. 113.

En el caso de Orcasitas, se solicitó la liquidación de una sociedad, alegándose en la demanda que la sociedad se había disuelto pero nunca se había liquidado. Los demandados presentaron en evidencia una escritura de liquidación de la sociedad, otorgada muchos años antes, y perfectamente válida y eficaz. Este Tribunal confirmó la sentencia que declaró sin lugar la demanda, por el fundamento de que la sociedad ya había sido liquidada en debida forma. El caso es, pues, completamente distinto al de autos, donde la liquidación anterior alegada por los demandados apelantes resultó ser totalmente nula. Pero los apelantes invocan ciertas frases de la opinión del caso de *Orcasitas,* completamente innecesarias a la resolución del caso, al efecto de que la parte demandante tenía la obligación, si consideraba nula la liquidación anterior, de alegar el hecho de la liquidación en la demanda e impugnar su validez. Ese *dictum* del caso de *Orcasitas* es erróneo. Al demandante normalmente no le incumbe alegar y destruir en su demanda las defensas que pueda creer tener el demandado. En el caso de autos, la demanda expone una causa de acción clara y completa, para la liquidación de la sociedad *Monagas* y *Vidal.* No incumbía al demandante alegar la existencia de una liquidación anterior nula e inexistente, ni las defensas de res judicata que pudiera creer tener la parte demandada. La parte demandada, por otra parte, tuvo plena oportunidad de establecer la existencia de una liquidación anterior, y sus defensas de cosa juzgada, y no logró establecer ninguna de esas defensas.

 La Sucesión de Rosario de la Rosa, compuesta de los hijos y nietos de Juan Monagas, se queja de que es parte innecesaria en este caso, o sea, que la demanda no aduce

hechos en cuanto a los componentes de dicha Sucesión. La Sucesión es dueña de la mitad del interés que tenía Juan Monagas en la sociedad Monagas y Vidal, interés que heredó de doña Rosario de la Rosa, esposa que fué de don Juan Monagas, y quien adquirió ese interés como parte de su participación en la sociedad de gananciales que tenía constituída con Monagas. Son por lo tanto partes necesarias en esta acción los componentes de la Sucesión.

Los apelantes sostienen que existe un defecto de partes demandantes y demandadas. Alegan que es parte necesaria la primera esposa de Ramiro Vidal, quien se divorció de él. No es así. Vidal casó en segundas nupcias, y fué su viuda, la aquí demandada Juana Garrastazu, quien adquirió el usufructo viudal, no correspondiendo nada por ese concepto a su primera esposa. *Julia Pirela Vda. de Figueroa* v. *Registrador,* 65 D.P.R. 955. En cuanto al interés de la primera esposa en la sociedad de gananciales constituída con Ramiro Vidal, los apelantes se encargaron de probar que la primera esposa otorgó escritura renunciando sus derechos en esa sociedad de gananciales. Carece por lo tanto la primera esposa de interés alguno en este caso. Igual ocurre con la Sucesión de Beauchamps, que los apelantes sostienen debió haber sido parte demandada. La sucesión de Beauchamps no tiene interés alguno en la liquidación de la sociedad Monagas y Vidal. Cierto es que los demandados pretendieron establecer la defensa de que Beauchamps adquirió, y vendió a Monagas, el interés de Vidal en la hacienda Belvedere. Pero la sucesión de Beauchamps no tiene interés en que prospere o deje de prosperar esa defensa, pues en este litigio nada se resuelve en relación con la sucesión de Beauchamps o sus bienes, ni afecta en nada a la sucesión de Beauchamps la sentencia que se ha dictado. Tampoco afecta a la sucesión de Beauchamps lo que se resuelve en este caso respecto a la nulidad e ineficacia de la ejecución de sentencia hecha por Beauchamps. Si Monagas tuviera algún derecho contra

la Sucesión Beauchamps con motivo de la nulidad e ineficacia de esa ejecución, ese derecho .tendría que ventilarlo en una acción contra la sucesión donde sus componentes tendrían plena oportunidad de sostener la validez de la ejecución (así como cualquier otra defensa que tuviesen), ya que para ellos lo aquí resuelto no es cosa juzgada.

■ Imputan los apelantes *laches* al demandante. La defensa de laches es una defensa de equidad y no es aplicable a un caso como éste, de liquidación de sociedad, cuya prescripción está reglamentada por ley. *Serrano* v. *Talavera,* 65 D.P.R. 438. Por otra parte, los hechos ya expuestos demuestran que no ha habido laches, que el demandante ha actuado con toda diligencia. Sólo se demoró su actuación durante el tiempo en que estuvo incapacitado, por ser menor de edad.

■ Sostienen los apelantes que la demanda y la prueba son insuficientes, por no aparecer que el demandante haya aceptado la herencia de Ramiro Vidal. Es frívola la contención. No aparece que Vidal dejara bienes algunos excepto su interés en la sociedad Monagas y Vidal. Desde que el demandante llegó a su mayoría de edad ha estado reclamando la herencia de su padre. Primero en. el caso 783, reclamó erróneamente, una participación en la hacienda Belvedere como suya por herencia. Ahora, al demandar en .el caso de autos, reclama lo que en verdad heredó. Raras veces se ve una aceptación de herencia más clara y formal que la que ha hecho el demandante.

■ Llegamos finalmente a la parte de la sentencia que condena a los demandados al pago de $5,000 por concepto de honorarios de abogado. La Sucesión de José Arturo Monagas ha apelado exclusivamente de este pronunciamiento de la sentencia. Dicha sucesión no hizo seria oposición a la demanda. No fué temeraria. El apelado, en su informe oral, expresó su conformidad con que se modificara la sentencia en el sentido de exonerar a la sucesión de José Ar-

turo Monagas de la condena de honorarios de abogado, y así debe hacerse.

En cuanto a la apelante sociedad Monagas y Vidal, debe también excluirse de la condena por concepto de honorarios de abogado, ya que las partes realmente temerarias en este caso lo han sido los demandados Juan Monagas y la Sucesión de Rosario de la Rosa y Sierra. En cuanto a éstos, no erró la corte al condenarles al pago de honorarios de abogado, ni al fijar su cuantía en $5,000, que es una suma moderada considerando las circunstancias del caso.

*Debe modificarse la sentencia apelada en el único sentido de excluir de la condena por honorarios de abogado a la sociedad Monagas y Vidal y a la sucesión de José Arturo Monagas, y así modificada confirmarse.*