NICOLÁS NOGUERAS, HIJO, querellante y recurrido, *v.* FERNANDO JOSÉ TONOS FLORENZÁN, querellado y recurrente.

*Número:* O-80-603      *Resuelto:* 31 de octubre de 1980

*Pedro Ortiz Álvarez* y *Guillermo Mojica Maldonado,* abogados del recurrente; *Nicolás Nogueras, Hijo, pro se.*

### SENTENCIA

Por ser de estricta aplicación al caso de autos la defensa de incuria, procede la revocación de la Resolución de la Junta

Revisora Electoral, del 30 de octubre de 1980, que descalifica al recurrente Fernando José Tonos Florenzán como candidato idóneo a representante por acumulación.

La propia Junta Revisora Electoral determinó que la fecha de nacimiento del recurrente Tonos Florenzán —quien cumplirá veinticinco años el 22 de febrero de 1981— "era conocida por las partes desde mayo de 1980",[1] mes en que se celebraron las primarias de los distintos partidos políticos. Art. 4.008 (16 L.P.R.A. sec. 3158). Ante esta circunstancia, ¿cómo puede justificarse que se dilatara hasta el 28 de octubre de este año —después de transcurridos aproximadamente cinco (5) meses siete (7) días antes del evento eleccionario— la formulación de la querella? Por todos es conocido que la defensa de incuria es procedente cuando la ley no establece término prescriptivo —*Piovanetti Doumont* v. *Martínez*, 99 D.P.R. 663 (1971); *Vidal* v. *Monagas*, 66 D.P.R. 622 (1946)— y aplica si se demuestra que la dilación causó o puede causar daño el demandado. *J.R.T.* v. *Marex Const. Co., Inc.*, 103 D.P.R. 135 (1974).

La Junta Revisora Electoral rechazó esta defensa bajo el razonamiento erróneo de que el recurrente Tonos Florenzán no hizo alegación de daños y que, aunque la Ley Electoral no establecía término prescriptivo, era evidente que debía ejercerse antes de la elección. Al así hacerlo, incidió.

Los daños en casos en que está envuelto el sufragio electoral son inconmensurables. Se reflejan cuantitativamente sobre el recurrido, privándole de pugnar para un escaño legislativo, y cualitativamente sobre el propio candidato, el partido político y todos aquellos electores que endosaron originalmente su nominación y presumiblemente votarán por él.

En última instancia, la aplicación de la defensa de incuria en este caso no tiene otra consecuencia que remitir al foro que históricamente y por disposición constitucional es el único

---

[1] Determinación de hecho de la Junta Revisora Electoral.

juez de la calificación de sus miembros, la Asamblea Legislativa.

Adviértase, además, el texto de la Sec. 5 del Art. III:

Ninguna persona podrá ser miembro de la Asamblea Legislativa a menos que sepa leer y escribir cualquiera de los dos idiomas, español o inglés; sea ciudadano de los Estados Unidos y de Puerto Rico y haya residido en Puerto Rico por lo menos durante los dos años precedentes a la fecha de la elección o nombramiento. Tampoco podrán ser miembros del Senado las personas que no hayan cumplido treinta años de edad, ni podrán ser miembros de la Cámara de Representantes las que no hayan cumplido veinticinco años de edad.

Esta disposición expone los requisitos para ser *miembro* del Senado y de la Cámara de Representantes, no para ser *candidato*. Al interpretar el Congreso de Estados Unidos las disposiciones de la Sec. 2 y del tercer párrafo de la Sec. 3 del Art. I de la Constitución de Estados Unidos, que a tal respecto son similares, tal ha sido su interpretación. 79 Cong. Rec. 9651–53, 9841–42.

Se revoca la resolución de la Junta Revisora Electoral, del 30 de octubre de 1980.

Así lo pronunció y manda el Tribunal y certifica el señor Secretario. El Juez Asociado Señor Díaz Cruz concurre en voto separado. El Juez Asociado Señor Negrón García disiente con opinión. El Juez Asociado Señor Martín no intervino.

(Fdo.) Ernesto L. Chiesa

*Secretario General*

—O—

Voto concurrente del Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 31 de octubre de 1980

La Junta Revisora Electoral carece de jurisdicción toda vez que el único fundamento aducido para descalificar al re-

currente es que no cumple con el requisito constitucional de edad para *ser miembro* de la Cámara de Representantes (Constitución, Art. III, Sec. 5), determinación que está reservada a dicho cuerpo legislativo por disposición expresa de nuestra Constitución en su Art. III, Sec. 9.

Ordena el Art. 4.002 (16 L.P.R.A. sec. 3152) de la Ley Electoral:

En caso de la renuncia oportuna, muerte, incapacidad o nulidad legal de la nominación de un candidato de un partido político, ocurrida entre los noventa (90) y sesenta (60) días anteriores al día de una elección, la vacante podrá cubrirse por el organismo directivo central de su partido mediante nombramiento que certificará a la Comisión.

Si la vacante surgiere durante los cincuenta y nueve (59) días anteriores al día de la elección, no podrá haber sustitución y el nombre del candidato nominado aparecerá en la candidatura del partido, y de resultar electo se declarará vacante el cargo.

Llegado el 59no día que precede la elección, cuando ya no es posible substituir el nombre del candidato en la papeleta, se extingue toda facultad en la Junta Revisora Electoral para descalificar al nominado porque esa demorada acción propiciaría la alternativa de declarar vacante el cargo de un representante electo en las urnas; eventualidad que debe ser proscrita toda vez que disminuye el valor del sufragio y la naturaleza esencialmente representativa del sistema democrático. Los organismos que administran los comicios tienen la fundamental encomienda de encauzar en forma ordenada el ejercicio del sufragio universal, igual, directo y secreto (Constitución, Art. II, Sec. 2). Resulta contradicción de este precepto anular la preferencia manifiesta del pueblo por un candidato sometido a elección, en favor de otro escogido por un organismo político.

Procede anular la decisión de la Junta Revisora Electoral porque actuó sin jurisdicción.

—O—

Opinión disidente del Juez Asociado Señor Negrón García.

San Juan, Puerto Rico, a 31 de octubre de 1980

Fernando José Tonos Florenzán fue certificado por la Comisión Estatal de Elecciones como candidato a Representante por *Acumulación* (¹) por el Partido Popular Democrático (²) para los comicios generales del próximo martes 4 de noviembre. Cumplirá veinticinco (25) años el 22 de febrero de 1981. Cuestiona ante nos el dictamen emitido el 30 de octubre de 1980 por la Junta Revisora Electoral accediendo a una "querella de descalificación" promovida dos días antes por el Senador Nicolás Nogueras, hijo, mediante la cual se decretaba su descalificación bajo el fundamento de ser nula su nominación, y ordenaba al Administrador General de Elecciones la publicación de dicho hecho en los medios de difusión pública. La razón específica invocada, que encontró eco en el organismo recurrido, es que Tonos Florenzán no posee el requisito constitucional de veinticinco (25) años de edad preceptuado en el Art. III, Sec. 5 de nuestra Constitución. (³)

---

(¹) En *García Passalacqua* v. *Tribunal Electoral*, 105 D.P.R. 49 (1976), sostuvimos la constitucionalidad del sistema de nominación de candidatos por acumulación.

(²) En la petición se nos señala que dicho partido le asignó los votos íntegros que se depositen en los precintos de Rincón, Hormigueros, Ponce 64, Juana Díaz, Barranquitas, Las Piedras 92 y 95, Luquillo, Patillas, Río Grande, Gurabo, Fajardo, San Juan 4, Adjuntas 60 y 61, Yabucoa, Carolina 107, Naranjito, Canóvanas, Corozal y Barceloneta.

(³) Reza:

"Ninguna persona podrá ser miembro de la Asamblea Legislativa a menos que sepa leer y escribir cualquiera de los dos idiomas, español o inglés; sea ciudadano de los Estados Unidos y de Puerto Rico y haya residido en Puerto Rico por lo menos durante los dos años precedentes a la fecha de la elección o nombramiento. Tampoco podrán ser miembros del Senado las personas que no hayan cumplido treinta años de edad, ni podrán ser miembros de la Cámara de Representantes las que no hayan cumplido veinticinco años de edad."

# I

Con el fin de evaluar en sus méritos la cuestión medular del recurso, hemos de superar las barreras procesales que el recurrente Tonos Florenzán, en apoyo de su moción de desestimación, levantó en el foro primario y reproduce en su petición: capacidad (*standing*) y jurisdicción.

En ninguno de estos señalamientos le asiste la razón. Veamos. *Primeramente*, el querellante Nicolás Nogueras, hijo, como elector idóneo, e independientemente de ser senador electo y aspirar nuevamente a dicho cargo, posee la *capacidad* suficiente y, por ende, el interés necesario para originar la querella. Y *segundo*, antes de una elección, la Junta Revisora Electoral tiene jurisdicción y autoridad *expresa* por la ley para entender en querellas de descalificación. A tal efecto el Art. 1.022(3) reconoce que podrá "[i]nvestigar y resolver, en primera instancia, cualquier querella que se presente basada en la alegación de que un candidato a primarias o a una elección general, *no reúne los requisitos establecidos por la Constitución de Puerto Rico*, por cualquier otra ley aplicable o por este Subtítulo, a tenor con la facultad conferida a la Junta en la sec. 3167 de este título". (Bastardillas nuestras.) 16 L.P.R.A. sec. 3022(3). Véase además, el Art. 4.017 (16 L.P.R.A. sec. 3167). Una vez certificada la elección por el organismo correspondiente, entra en juego la facultad constitucional consagrada en el Art. III, Sec. IX, que reserva a las cámaras legislativas el juzgar inicialmente "la capacidad legal de sus miembros, de la validez de las actas y del escrutinio de su elección". *Santa Aponte* v. *Srio. del Senado*, 105 D.P.R. 750 (1977). Finalmente, resulta dudoso la aplicabilidad de la defensa de incuria. Las calificaciones de un candidato a un puesto público son materia de interés general que no puede dejarse al solo transcurso del tiempo. Como veremos más adelante, la Ley Electoral sabiamente provee unos remedios cuando las descalificaciones, por cualesquiera razones,

sobrevienen estando próximas las elecciones, sin que se afecte el electorado y los partidos políticos.

## II

Atendidas estas cuestiones preliminares, concentremos nuestra atención en lo esencial del caso: la edad como razón de la descalificación.

El Art. III, Sec. 5 de la Constitución fija como requisitos para "ser miembro de la Asamblea Legislativa", educación, ciudadanía, residencia, y las edades de 30 años y 25 para senador y representante, respectivamente.

Es sumamente escaso, por no decir ninguno, el historial que inspiró esta condición. Lo único que surge es que la Convención Constituyente aspiró ". . . a que tales requisitos de edad [fueran] útiles para establecer los balances que se desean lograr en la organización legislativa mediante dos cámaras". *Diario de Sesiones de la Convención Constituyente,* 1961, T. 4, pág. 2598. Al reflexionar sobre el requisito de edad en materia electoral, en contraste con los otros, advertimos las siguientes características: (a) *es* la única calificación que con carácter automático sobrevendrá en determinado momento, con el simple transcurso del tiempo, salvo que se interponga el evento fortuito de la muerte; (b) la Constitución fija como edad mínima para todo elector, diez y ocho (18) años; (c) relacionado íntimamente con la edad, la Sec. 8 del mismo Art. III establece que el *"término del cargo de los Senadores y Representantes comenzará el día dos de enero* inmediatamente siguiente a la fecha en que se celebre la elección general en la cual hayan sido electos" —énfasis nuestro—; y a tenor de varias disposiciones del Código Político, en dicha fecha se celebrará la sesión inaugural y se procederá al juramento del cargo. Arts. 21, 22 y 20 (2 L.P.R.A. secs. 2, 3 y 4).

De la interacción de los artículos mencionados y la característica que distingue el requisito de edad, aflora una conclusión muy importante: la exigencia constitucional de edad

para ser legislador no es de tipo absoluto, sino de naturaleza relativa. Tiene que satisfacerse al momento en que se va a jurar y ocupar el cargo. Como corolario, lícitamente, un elector capacitado puede ser nominado y aparecer en la papeleta electoral si, a la fecha en que va a jurar y tomar posesión oficial, posee la edad mínima constitucional requerida. Ello no será motivo suficiente de descalificación. *Contrario sensu* y como regla general, no es candidato idóneo al puesto de legislador, aquel elector carente de suficiente edad constitucional a la fecha en que viene obligado a jurar.

Así, en el caso de autos, resulta obvio que el recurrente Tonos Florenzán no calificaría como candidato por no tener la edad requerida a la fecha en que deberá jurar, de resultar electo. No pasamos por alto que podría argumentarse que estando próximo a cumplir dicha edad el 22 de febrero de 1981, por ser un período corto —cincuenta y un días— de ser elegido sería razonable que se le expidiera credencial suficiente y se pospusiera su juramento hasta ese momento.

La dificultad de esta proposición es que plantearía serios reparos constitucionales sobre la validez, impacto y vigencia del voto del electorado. ¿Qué término de espera es razonable sin que se afecte el principio de adecuada representación? ¿Dónde se fijan los límites? ¿No afecta ello la ordenación de las labores constitucionales de las cámaras? ¿Debe propiciar el Poder Judicial la observación de los requisitos constitucionales o sostener un relajamiento en los mismos? Estas interrogantes y la claridad del texto constitucional enumerativo del requisito de tiempo nos mueven a concluir que el momento crucial y determinante, para fines de la edad mínima parlamentaria, es cuando comienzan las labores legislativas. Es allí y entonces que se requiere la misma para fines del juramento y la toma de posesión del cargo. Desde este ángulo somos de opinión que de no haberse impugnado previamente y con éxito la candidatura del recurrente Tonos Florenzán —y haberse certificado— hubiera sido entonces de la compe-

tencia de la cámara concernida y no de la de este foro judicial, pasar juicio inicial sobre tal circunstancia. ([4])

En resumen, resolvemos que el recurrente Tonos Florenzán no está calificado por edad para ser candidato a Representante por Acumulación. Abona a esta determinación el hecho de que el Art. 4.001(b) de la Ley, 16 L.P.R.A. sec. 3151(b), establece como condición para un candidato, ser elector —lo que implica poseer la ciudadanía, diez y ocho (18) años y estar inscrito— y el Art. 4.014 (16 L.P.R.A. sec. 3164), le exige juramento de candidatura en el cual, entre otras cosas, debe exponer "que cumplirá con los requisitos constitucionales aplicables".

### III

Lo expuesto no resuelve totalmente el caso de autos, pues la Junta Revisora Electoral, al descalificarlo, no dispuso remedio apropiado. Se limitó a decretar nula la nominación y ordenar al Administrador que publicara ese hecho, pasando por alto que ello no es trámite autorizado en la Ley Electoral vigente, que meticulosamente —para situaciones de esta naturaleza— en su Art. 4.002 provee:

En caso de la renuncia oportuna, muerte, incapacidad o nulidad legal de la nominación de un candidato de un partido político, ocurrida entre los noventa (90) y sesenta (60) días anteriores al día de una elección, la vacante podrá cubrirse por el organismo directivo central de su partido mediante nombramiento que certificará a la Comisión.

Si la vacante surgiere durante los cincuenta y nueve (59) días anteriores al día de la elección, no podrá haber sustitución

---

([4]) Contra esta solución no milita el caso del senador Luis Alfredo Colón —quien juró en 12 de febrero de 1945 sin tener los treinta (30) años requeridos— ni el del representante Luis A. Torres Torres el 2 de enero de 1973. *Diario de Sesiones*, 1973, Vol. 27, pág. 25. Ambas son actuaciones en el seno legislativo, que nunca fueron cuestionadas ni pasaron por el tamiz de una impugnación judicial y, por lo tanto, no constituyen precedentes jurídicos válidos; versan sobre candidatos electos que no fueron descalificados con anterioridad, sino que sus elecciones fueron certificadas.

y el nombre del candidato nominado aparecerá en la candidatura del partido, y de resultar electo se declarará vacante el cargo. 16 L.P.R.A. sec. 3152.

De la lectura integral de esta norma se desprende que es de estricta aplicación su segundo párrafo —por tratarse de una candidatura vacante dentro del período allí prescrito— en cuyo caso *"no podrá haber sustitución* y el nombre del candidato nominado *aparecerá* en la candidatura del partido, y de resultar electo *se declarará vacante el cargo"*. (Bastardillas nuestras.) ¿Cuál es el propósito y significado correcto de este precepto? Observamos que la diferencia entre el tratamiento brindado, de autorizar o no el cambio del candidato implicado, radica en el tiempo que falta para la elección. Al acercarse al período crítico, aflora otra solución. Obviamente las razones de esta limitación responden a dos propósitos: superar los problemas administrativos y organizacionales relativos a la impresión de las papeletas y la remisión de los paquetes que contienen todo el material electoral a ser utilizado en los distintos colegios de votación. Podemos deducir también que se intenta estabilizar las candidaturas para que el electorado conozca y pueda ejercer con elementos de juicio más correctos sus decisiones. Ahora bien, resalta a la vista que el estatuto no declara nula la elección, sino "vacante el cargo". No podemos concebir que ello quiera decir que queda sin ocupar indefinidamente el escaño legislativo por razón de perderlo el partido político que lo nominó. Esto privaría al electorado de una adecuada representación e implicaría graves problemas a nivel constitucional que trastocarían la estabilidad, capacidad y facultad representativa de los partidos políticos en torno a la selección de sus candidatos a cargos por acumulación.([5]) Tampoco puede entenderse que

---

([5]) Es importante indicar que la ley reconoce a los partidos políticos el derecho de determinar y fijar "el número de candidatos por acumulación", potestad ésta que *"será final y regirá cualquier procedimiento relacionado con dichos cargos por acumulación"* que deba realizarse *posteriormente.* (Bastardillas nuestras.) Art. 4.004 (16 L.P.R.A. sec. 3154).

el puesto deberá ser adjudicado a otro candidato de distinto partido político.

La interpretación restrictiva de esta disposición acarrearía graves interrogantes en el ámbito constitucional. Nótese que la vacante se puede deber a actos voluntarios del candidato —renuncia—, al igual que a circunstancias ajenas a su control: muerte, incapacidad física o nulidad legal. Si el factor precipitante de la vacante ocurre dentro de determinado período, "el organismo directivo central de su partido mediante nombramiento que certificará a la Comisión" *reemplazará* al candidato. Si acontece en período próximo a la elección, el partido no podrá sustituirlo en la papeleta y aparecerá su candidatura, pero "de resultar electo declarará vacante el cargo".

En virtud de las delicadas consideraciones expuestas, nos inclinamos a sostener que la expresión "se declarará vacante el cargo" indica que *se decretará y certificará a la Asamblea Legislativa que el cargo está sin proveer*. A la luz de esta interpretación, al producirse la vacante al cargo de legislador por acumulación, entra en escena el trámite contemplado en el Art. 5.006, *in fine*, que siguiendo la pauta constitucional[6] establece: "cuando ocurriere una *vacante* en el cargo de Senador o Representante por Acumulación *que hubiere sido nominado* por un partido . . . se cubrirá la misma por el Presidente de la Cámara correspondiente, a propuesta del partido político a que perteneciere dicho Senador o Representante

---

[6] *"El término del cargo de los Senadores y Representantes comenzará el día dos de enero inmediatamente siguiente a la fecha en que se celebre la elección general en la cual hayan sido electos.* Cuando surja una vacante en el cargo de Senador o Representante por un distrito, dicha vacante se cubrirá según se disponga por ley. *Cuando la vacante ocurra en el cargo de un Senador o un Representante por Acumulación, se cubrirá por el Presidente de la Cámara correspondiente, a propuesta del partido político a que pertenecía el Senador o Representante cuyo cargo estuviese vacante, con un candidato seleccionado en la misma forma en que lo fue su antecesor.* La vacante de un cargo de Senador o Representante por Acumulación electo como candidato independiente, se cubrirá por elección en todos los distritos." (Bastardillas nuestras.) Art. III, Sec. 8.

con una persona seleccionada en la misma forma en que lo fue su antecesor." (Bastardillas nuestras.) 16 L.P.R.A. sec. 3206.

La situación es análoga a cuando por renuncia, muerte u otra razón surge la vacante de un candidato elegido, *después* de las elecciones, pero *antes* del comienzo de la Asamblea Legislativa, y antes de jurar y tomar posesión del cargo.

Sería un contrasentido que la Constitución permitiera la sustitución de vacantes debidas a un sinnúmero de razones, de miembros que hubieran estado ocupando sus cargos en la Legislatura, y se negara al electorado y partidos políticos igual derecho, por razón de que la circunstancia que motiva la indisponibilidad sucede cincuenta y nueve (59) días anteriores a las elecciones. La efectividad del sufragio electoral y el derecho de ser representado no puede estar expuesto a tan frágil posición. La clave jurídica que supera este enigma es resolver que esa vacante debe ser cubierta mediante el procedimiento constitucional que reconoce y autoriza, por excepción, la designación del cargo por acumulación, por el organismo directivo del partido político, siguiendo "el mismo procedimiento mediante el cual fue nominado su antecesor". *Diario de Sesiones, op. cit.*, pág. 2599.

Disentimos. Dictaríamos sentencia confirmatoria.

